The STATE of Ohio, Appellee,

v.

SHEPHERD, Appellant.

[Cite as *State v. Shepherd* (1997), 122 Ohio App.3d 358.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. 16186.

Decided Aug. 15, 1997.

360

*John J. Amarante,* Montgomery County Assistant Prosecuting Attorney, for appellee.

*Scott W. Earhart,* for appellant.

FREDERICK N. YOUNG, Presiding Judge.

This case comes to us from the Montgomery County Court of Common Pleas, Criminal Division. Defendant-appellant, Patricia Ann Shepherd, appeals from the trial court's denial of her motion to suppress and her subsequent conviction of drug abuse, a violation of R.C. 2925.11(A). We reverse.

I

On March 23, 1996, Dayton Police Officer Kevin Brame was on routine patrol in a marked police cruiser in the area of Howell Street and Mathison Avenue, a high crime area within the city of Dayton. At Howell and South Mathison, Officer Brame observed a white Pontiac Trans Am with the passenger door fully open parked facing north in the intersection in such a way that it was blocking the route of eastbound traffic. On first seeing the car, Officer Brame noted that

it contained as individual in the driver's seat, but the front passenger seat was unoccupied. Officer Brame further observed that five or six individuals were standing around the front doors and front end of the vehicle. Officer Brame suspected that the individuals were engaged in "narcotic activity."

As Officer Brame approached the scene in the northbound alley running between South Mathison Avenue and Grosvenor Avenue, the driver closed the passenger door and began driving north rapidly. Officer Brame pulled behind the Trans Am as the driver drove away and noticed that "the vehicle also had a loud and defective muffler." Officer Brame testified under oath that he then initiated a traffic stop because of the muffler. The driver pulled the car over after traveling for several blocks. Officer Kurt Schwarz also arrived at the scene in a separate patrol car.

Officer Brame approached the Trans Am, and upon noticing that there were two individuals in the back seat but no one in the front passenger seat, asked the driver why they were in the area and whether there had been a passenger in the front seat. The driver disclosed that the three individuals were in the area for the purpose of purchasing narcotics, and that the front seat had been occupied by a woman who got into the car to sell them crack cocaine. He further disclosed, however, that the transaction was foiled by the arrival of Officer Brame and that the woman had left the car without completing the sale. The driver described the would-be seller as a black female of medium to medium-dark complexion, whose height was 5'5" to 5'6", and who wore a long, black leather coat and blue jeans. The driver gave his name as Melvin Weigandt.

Officer Brame patted down all of the individuals and searched the car, and having failed to discover any crack cocaine, issued the driver a citation for the muffler. The stop had consumed approximately thirty minutes. Both officers then proceeded to the area of Howell and South Mathison to seek out the woman described by the driver. When the officers returned to the alley from which Officer Brame had first emerged to see the Trans Am half an hour earlier, they discovered two men and a woman in the rear of the alley. The woman matched the description given by Weigandt.

The officers informed the woman that they "needed to ask her some questions" and that they were going to check her for weapons and then place her in the back seat of one of the patrol cars. Because no female officer was present to conduct the search, Officer Brame conducted a "visual inspection" by ordering her to open her pockets and looking inside of them. While peering into the left breast pocket of the woman's coat, he observed a small piece of rolled brown paper. Officer Brame testified that he recognized the paper as a common container for crack cocaine. On Officer Brame's request, the woman removed the paper and handed it to him. Officer Brame unrolled the paper and discovered that it contained a

substance resembling crack cocaine. Officer Brame placed the woman under arrest, handcuffing her and placing her in the back of his cruiser. He then searched her coat and purse, discovering more of the substance.

The woman, defendant-appellant Patricia Ann Shepherd, was indicted on one count of drug abuse, on April 2, 1996. On April 26, 1996, Shepherd entered a plea of not guilty. Shepherd's court-appointed attorney filed a motion to suppress all the evidence seized from Shepherd by the law enforcement officers on the night of March 23, 1996, on the grounds that the officers violated Shepherd's rights under the Fourth and Fourteenth Amendments to the United States Constitution and the Ohio Constitution. A hearing was held on July 11, 1996. After the hearing, at which Officer Brame was the only witness, the court ruled that the search and seizure was not illegal, stating:

"[C]onsidering the totality of the circumstances, the Court finds that the officers did have sufficient probable cause. Although the officers cannot vouch for the credibility of informant Weigandt, nevertheless, he gave them specific information about a potential drug trafficker containing height, complexion and garments worn. Furthermore, the alleged drug transaction was to have occurred in a 'high drug area.' Furthermore, upon returning to the scene within a short period of time, the officers observed the same individual who fit the description from the informant.

"Considering the totality of the circumstances, the Court finds that the officers had reasonable cause with which to stop the Defendant and inquire about possible drug activity. Furthermore, the officers had a right to pat down the individual for weapons for their protection. The Court finds the procedure of the officers reasonable to request the Defendant to open her pockets versus a patdown since she was a female suspect and there was no female officer on duty. Thereafter, the officers had within plain view suspected contraband and thereafter conducted the arrest and subsequent search."

After the court's denial of her motion to suppress, Shepherd changed her plea to "no contest." On October 4, 1996, the court filed a termination entry sentencing Shepherd to the Ohio Reformatory for Women for an eighteen-month term, but suspending the sentence and placing her on probation for no more than five years. Shepherd filed a timely notice of appeal on October 21, 1996, and asserts two assignments of error.

## II

### First Assignment of Error

"The trial court denied Patricia Shepherd her constitutional right to be free from unreasonable searches and seizures when it denied her motion to suppress

illegally seized evidence because the police officer lacked reasonable suspicion to stop and search defendant."

■ Under this assignment of error, Shepherd argues that the information provided by Melvin Weigandt was both inadequate to form the basis for reasonable suspicion and unsupported by sufficient indicia of reliability. According to Shepherd, Officer Brame did not have the requisite cause to detain her and did so in contravention of her state and federal constitutional rights against unreasonable searches and seizures. Because the search and seizure protections protected by the Fourth Amendment as incorporated into the Due Process Clause of the United States Constitution, and Section 14, Article I of the Ohio Constitution are co-extensive, the same analysis governs both claims.

■ Shepherd's encounter with Officer Brame began as an investigatory detention under *Terry v. Ohio* (1968), 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889. In *Terry,* the United States Supreme Court held that a police officer may detain an individual for brief questioning where the officer has a reasonable suspicion that the individual is engaged in criminal activity. The usual requirements of a warrant and probable cause are not implicated by such an encounter because an investigatory detention is less intrusive than a formal custodial arrest. As the *Terry* court explained:

"[W]here a police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot and that the persons with whom he is dealing may be armed and presently dangerous, where in the course of investigating this behavior he identifies himself as a policeman and makes reasonable inquiries, and where nothing in the initial stages of the encounter serves to dispel his reasonable fear for his own or others' safety, he is entitled for the protection of himself and others in the area to conduct a carefully limited search of the outer clothing of such persons in an attempt to discover weapons which might be used to assault him." *Terry,* 392 U.S. at 30, 88 S.Ct. at 1884–1885, 20 L.Ed.2d at 911.

■ Thus, the Supreme Court has determined that in light of the limited duration and purpose of the search, an officer's decision to conduct an investigatory detention of an individual need only be supported by reasonable, articulable suspicion of criminal activity. *Id.; State v. Taylor* (1995), 106 Ohio App.3d 741, 667 N.E.2d 60. Reasonable suspicion is "vaguely defined as something more than an inchoate or unparticularized suspicion or 'hunch,' but less than the level of suspicion required for probable cause." *State v. Osborne* (Dec. 13, 1995), Montgomery App. No. CA 15151, unreported, 1995 WL 737913. In application, reasonable suspicion has been an easier standard for law enforcement officers to satisfy than the language of *Terry* might suggest. See Katz, Ohio Arrest, Search

and Seizure (1997), Section 14.03(B). For example, while the *Terry* court disapproved of reliance on police "hunches," the Supreme Court of Ohio has been highly deferential to the judgment of police officers. *Id.,* citing, *e.g, State v. Bobo* (1988), 37 Ohio St.3d 177, 179, 524 N.E.2d 489, 491–492, certiorari denied (1988), 488 U.S. 910, 109 S.Ct. 264, 102 L.Ed.2d 252; *State v. Freeman* (1980), 64 Ohio St.2d 291, 295, 18 O.O.3d 472, 474–475, 414 N.E.2d 1044, 1047, certiorari denied (1981), 454 U.S. 822, 102 S.Ct. 107, 70 L.Ed.2d 94.

Although the *Terry* court referred specifically to a police officer's own observation of unusual conduct giving rise to reasonable suspicion, subsequent Ohio and federal law makes clear that a stop may be based on information received from an informant or anonymous tip. *Adams v. Williams* (1972), 407 U.S. 143, 147, 92 S.Ct. 1921, 1923–1924, 32 L.Ed.2d 612, 617–618; *United States v. Hensley* (1985), 469 U.S. 221, 105 S.Ct. 675, 83 L.Ed.2d 604; *State v. Otte* (1996), 74 Ohio St.3d 555, 559–560, 660 N.E.2d 711, 717. Information received from an informant may provide reasonable suspicion for a *Terry* stop where it is supported by sufficient indicia of reliability or corroborated by independent police work. *Alabama v. White* (1990), 496 U.S. 325, 110 S.Ct. 2412, 110 L.Ed.2d 301; *Adams, supra.* However, there is no bright-line rule for determining whether an informant's tip is sufficiently reliable to provide grounds for an investigatory detention. *State v. English* (1993), 85 Ohio App.3d 471, 620 N.E.2d 125, appeal dismissed (1993), 67 Ohio St.3d 1434, 617 N.E.2d 685.

In determining whether reasonable suspicion was present, we sacrifice certainty for flexibility and look to the "totality of the circumstances." *Bobo, supra; State v. Wilks* (Sept. 30, 1993), Montgomery App. No. 13654, unreported, 1993 WL 386246. In this case, the driver of the Trans Am, Melvin Weigandt, gave Officer Brame a physical description of a woman and informed him that she was attempting to sell crack cocaine in the area that he had just left. When the officers returned to the scene of the alleged near-transaction, they discovered a woman matching the description provided by Weigandt and initiated the *Terry* stop. The trial court identified the requisite articulable facts constituting reasonable suspicion as follows: Shepherd was in the area where the aborted drug transaction was said to have occurred and matched the description given by Weigandt and she was in a "high drug area." The court determined that under the totality of the circumstances, the officers had reasonable suspicion to detain Shepherd. We are bound to regard the court's findings of fact as true as long as they are supported by competent and credible evidence. *State v. Clay* (1973), 34 Ohio St.2d 250, 63 O.O.2d 391, 298 N.E.2d 137; *State v. Curry* (1994), 95 Ohio App.3d 93, 641 N.E.2d 1172. We are not, however, bound to agree that those facts constituted reasonable suspicion to detain Shepherd. *State v. White* (1996), 110 Ohio App.3d 347, 351, 674 N.E.2d 405, 408.

What we must determine is whether Weigandt was a reliable source of information and, if so, whether the information that he provided to Officer Brame was sufficient to constitute reasonable suspicion that Shepherd was involved in criminal activity. In assessing an informant's reliability, veracity and basis of knowledge are highly relevant factors. See *Illinois v. Gates* (1983), 462 U.S. 213, 230, 113 S.Ct. 2317, 2328, 76 L.Ed.2d 527, 543; *Wilks, supra.* In the case of a citizen-informant who is victimized or merely witnesses a crime and reports it out of a sense of civic duty, the police may be entitled to presume that the informer is reliable. *Toledo v. Elkin* (1994), 68 Ohio Misc.2d 59, 647 N.E.2d 569, citing *United States v. Harris* (1971), 403 U.S. 573, 91 S.Ct. 2075, 29 L.Ed.2d 723; *State v. Carstensen* (Dec. 18, 1991), Miami App. No. 91–CA–13, unreported, 1991 WL 270665. No such faith is extended to an informant who is, as Weigandt was, privy to information solely because he is himself implicated in criminal activity. *Fairborn v. Adamson* (Nov. 17, 1987), Greene App. No. 87–CA–13, unreported, 1987 WL 20264. His information may be relied upon only if the totality of the circumstances demonstrates that he is reliable or his information concerning criminal conduct was corroborated through independent police work.

Weigandt's basis of knowledge is not in question, as he related what he purported to be firsthand knowledge to the officer. Veracity, however, presents a different question. As noted above, Weigandt was not a citizen-informant who was victimized or merely happened to witness a crime. Additionally, in contrast with most "known informant" cases involving information gathered from criminal participants themselves, see, *e.g., Adams v. Williams* (1972), 407 U.S. 143, 146–147, 92 S.Ct. 1921, 1923–1924, 32 L.Ed.2d 612, 617–618; *State v. White* (1996), 110 Ohio App.3d 347, 351, 674 N.E.2d 405, 408; *State v. Gaston* (1996), 110 Ohio App.3d 835, 837, 675 N.E.2d 526, 527, appeal dismissed (1996), 77 Ohio St.3d 1424, 670 N.E.2d 1008, the officer in this case had never encountered or received information from Weigandt before, and, as the trial court found, "could not vouch for Weigandt's credibility." Order and Entry, at 3. The confession of Weigandt, who did not testify at the suppression hearing, to being involved in drug activity does not necessarily enhance his credibility. In fact, Weigandt's admission that he was in the area attempting to buy crack cocaine may just as reasonably be read as a denial that he was in possession of illegal drugs. Because Weigandt and his confederates were, according to Officer Brame, subjected only to a patdown, we cannot know whether any of them had crack cocaine hidden on his person.[1] As a criminal suspect under police detention, with every incentive to

---

1. This should not be read to suggest that Officer Brame had cause to subject the occupants of the Trans Am to any greater intrusion than he did, or even to imply our approval of the actions he did take with regard to Weigandt and the others. The state's brief on appeal describes the stop and frisk as follows: "As the vehicle pulled away, Officer Brame noted that

point Officer Brame in another direction, Weigandt's information should have been regarded with the highest scrutiny.

▅ Of course, as mentioned above, a tip which by itself lacks sufficient indicia of reliability may nonetheless provide reasonable suspicion justifying an investigative detention where it is sufficiently corroborated through independent police work. *State v. Halahan* (1995), 108 Ohio App.3d 33, 669 N.E.2d 883; *State v. Campbell* (1990), 68 Ohio App.3d 688, 589 N.E.2d 452. However, "simple corroboration of neutral details describing the suspect or other conditions existing at the time of the tip, without more, will not produce reasonable suspicion for an investigatory stop." *State v. Ramsey* (Sept. 20, 1990), Franklin App. Nos. 89AP–1298 and 89 AP–1299, unreported, 1990 WL 135867. This court has specifically rejected the proposition that "where, without more, the police observe an individual who meets the physical description provided by the anonymous informant and is found in the location described by the informant, the police have corroboration sufficient to entertain a reasonable and articulable suspicion that the individual was or is involved in criminal activity." *State v. Harris* (May 18, 1994), Montgomery App. No. 14111, unreported, 1994 WL 191403.

▅ The only corroboration here was of neutral details. Officer Brame did not see Shepherd engaged in any activity of a suspicious nature, such as entering and exiting parked cars along the street, that would have verified Weigandt's story or provided independent grounds for suspicion. In fact, he verified only that a woman meeting the description—a description Officer Brame admitted was "general"—was in the area, and observed nothing independently indicating that she was involved in criminal activity. Although this case is distinguishable from *Harris* because it does not involve an anonymous informer, we believe that the principle articulated in that case reaches the facts presented to us today. Here an identified informant who was not known to the police officer and who may have had an incentive to direct the police away from his trail offered a description of a nameless woman in very common clothing that did not include weight,

the Trans Am had an impermissibl[y] loud muffler. * * * Weigandt was asked for his identification. He had to get it out of his back pocket so he had to get out of the car to get at it, therefore, he was patted down for weapons. Upon patting him down, no crack cocaine was found in his possession." Appellee's Brief, at 2. While a loud muffler may provide reasonable suspicion to stop a car, *Osborne, supra,* citing *State v. Melvan* (1992), 80 Ohio App.3d 443, 609 N.E.2d 595, and *State v. VanScoder* (1994), 92 Ohio App.3d 853, 637 N.E.2d 374, the state's own version of the facts strongly suggests both that Officer Brame lacked cause to pat down Weigandt, as carrying identification in one's back pocket can hardly constitute reasonable suspicion that one is armed and dangerous, and that the patdown was merely a pretext to search for narcotics. We have encountered some difficulty in determining which is more troubling: that Officer Brame apparently not only lacked cause to pat down the occupants of the vehicle, but also exceeded the scope of the search, or the state's tacit and unapologetic acknowledgment of the same.

approximate age, any hair description, and did not mention the four-inch scar on the left cheek of the individual subsequently stopped. Police verification of minimal neutral details, which amount to general description and location, is not sufficient to justify an investigative detention.

Beyond arguably confirming some neutral details obtained from Weigandt, Officer Brame had no firsthand observations on which to rely in stopping Shepherd. His earlier observation of the Trans Am parked in the intersection has no bearing on the reasonable-suspicion analysis because he could not state that Shepherd (or anyone resembling her) was present at the scene. Furthermore, even had he seen Shepherd in or around the Trans Am, he would not have had reasonable suspicion on the basis of that observation to detain her. In *State v. Jones* (1990), 70 Ohio App.3d 554, 591 N.E.2d 810, appeal dismissed (1991), 59 Ohio St.3d 718, 572 N.E.2d 691, a police officer initiated a *Terry* stop after observing the defendant sitting in the driver's seat of a parked car in a high crime area with an individual whom the officer had arrested for drug abuse a year earlier. The officer had also observed three or four people standing around the car and one person on the passenger side of the car leaning in the window, all of whom began to walk away in different directions when the police officers, who were wearing police jackets and gun belts, pulled up in an unmarked van. We held that, in the absence of any other observations such as "furtive behavior," the officer's belief that a drug deal was under way "was nothing more than an unarticulated hunch." *Id.*, 70 Ohio App.3d at 559, 591 N.E.2d at 813. Officer Brame's observations at the intersection of Howell and South Mathison are, we believe, indistinguishable from the officer's observations in *Jones*.

In this case, the only other articulable fact supporting reasonable suspicion that was not provided by Weigandt was Officer Brame's assertion that Shepherd was in a "high drug area" at the time of the encounter in the alley. We dismissed this argument on the facts in *Jones, supra,* stating that "[a] person's mere presence in an area of high crime activity does not suspend the protections of the Fourth Amendment." *Id.*, citing *State v. Chandler* (1990), 54 Ohio App.3d 92, 560 N.E.2d 832, appeal dismissed (1990), 49 Ohio St.3d 716, 552 N.E.2d 945. In fact, the reliance on the characterization of certain areas as "high crime" or "high drug" in an effort to justify stopping and frisking citizens has been criticized in several quarters. One commentator argues that "location may in fact be a euphemism for race." Katz, Ohio Arrest, Search & Seizure (1997), Section 14.03(B). Furthermore, Justice Wright has argued against reliance on the character of the neighborhood involved, stating that "[a] citizen's Fourth Amendment rights are the same regardless of his residence, station in life or where he happens to be when he encounters a police officer." *State v. Andrews* (1991), 57

Ohio St.3d 86, 89, 565 N.E.2d 1271, 1275 (Wright, J., dissenting), certiorari denied (1991), 501 U.S. 1220, 111 S.Ct. 2833, 115 L.Ed.2d 1002.

 Moreover, while the Supreme Court of Ohio has recognized an area's reputation for criminal activity as an articulable fact supporting reasonable suspicion, *State v. Bobo* (1988), 37 Ohio St.3d 177, 179, 524 N.E.2d 489, 491, certiorari denied (1988), 488 U.S. 910, 109 S.Ct. 264, 102 L.Ed.2d 252; *Andrews, supra,* it has more recently adopted an opinion of this court holding that the fact that an investigative detention occurred in a high crime area is not by itself sufficient to justify the stop. *State v. Carter* (1994), 69 Ohio St.3d 57, 65, 630 N.E.2d 355, 362 (Appendix). As Judge Brogan stated in that case, "[t]o hold otherwise would result in the wholesale loss of the personal liberty of those with the misfortune of living in high crime areas." *Id.* In light of the dearth of reliable information or firsthand observation to justify the stop in this case, we believe that the status of the area as "high crime" did not provide Officer Brame with the requisite cause to stop Shepherd.

Courts sometimes analyze cases involving whether an officer had reasonable suspicion to stop an individual by inverting the question and asking whether the officer would have been delinquent in his duties had he not taken the action that he did. See, *e.g., State v. Antill* (1993), 91 Ohio App.3d 589, 632 N.E.2d 1370. We feel compelled to note that our finding that the information provided by the informant was not sufficient to constitute reasonable suspicion does not mean that it did not warrant further investigation by law enforcement officials. However, in this case, the police officers immediately apprehended Shepherd and searched her without any attempt to investigate the tip through less invasive means.

The appellant's first assignment of error is sustained.

### III

### Second Assignment of Error

"The trial court denied Patricia Shepherd her constitutional right to be free from unreasonable searches and seizures when it denied her motion to suppress illegally seized evidence because the search of defendant was violative of the Fourth and Fourteenth Amendments and comparable provisions of the Ohio Constitution as the search was not within the permissible scope set forth in *Terry* and was not justified under any exception to the warrant requirement."

Under this assignment of error, Shepherd argues that the search of her person was in violation of the Fourth Amendment. She argues that the search cannot be justified under *Terry, supra,* because it exceeded the scope of a patdown for weapons, and that no other exception to the warrant requirement applies to the facts of this case.

With respect to the *Terry* stop, an officer may conduct a limited search of an individual who is the subject of an investigatory detention where the officer has a reasonable suspicion that the individual is armed. *State v. Williams* (1990), 51 Ohio St.3d 58, 61, 554 N.E.2d 108, 112, certiorari denied (1990), 498 U.S. 961, 111 S.Ct. 394, 112 L.Ed.2d 404. As the *Terry* court stated, "When an officer is justified in believing that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous," the officer may pat down the outer clothing of the suspect to determine whether he is carrying weapons. *Terry, supra,* 392 U.S. at 24, 88 S.Ct. at 1881, 20 L.Ed.2d at 907–908. However, because we have found that no reasonable suspicion existed to justify the investigative detention of Shepherd in the first place, we must also find that the search attendant to that stop was conducted without the requisite suspicion.

The state responds that, even if the search was unsupported by reasonable suspicion or went beyond the scope of *Terry,* it was valid because Shepherd consented to the search of her pockets. We disagree. We first note that the trial court clearly rested its decision on the belief that the search of Shepherd's pockets was conducted pursuant to the officer's authority under *Terry* to frisk for weapons and made no findings suggesting that the search was consensual. Order and Entry, at 3. Moreover, the state has conceded throughout this matter that the encounter between Shepherd and Officers Brame and Schwarz was an investigative detention under *Terry.* The state has never argued, and we do not understand it to be arguing now, that the encounter was consensual. Rather, it now argues that Shepherd willingly complied with the officer's request to inspect the insides of her pockets. Even if Shepherd did so comply, the search was nonetheless invalid because "consent given during an investigatory detention is only valid if the police officer had reasonable suspicion to detain the person." *State v. Taylor* (1995), 106 Ohio App.3d 741, 749, 667 N.E.2d 60, 65–66, citing *Florida v. Royer* (1982), 460 U.S. 491, 502–503, 103 S.Ct. 1319, 1326–1327, 75 L.Ed.2d 229, 239–240.

Accordingly, the second assignment of error is sustained.

## IV .

The United States Supreme Court has stated that "[a] ruling admitting evidence in a criminal trial, we recognize, has the necessary effect of legitimizing the conduct which produced the evidence." *Terry,* 392 U.S. at 13, 88 S.Ct. at 1875, 20 L.Ed.2d at 901. We believe that the conduct in this case went beyond the authority of honest law enforcement and violated the Fourth Amendment. Accordingly, regrettable as the result may be in this individual prosecution, the exclusionary rule must be allowed to operate to suppress the evidence resulting from the investigatory detention of Shepherd.

Because we sustain appellant's first and second assignments of error, the judgment of the Montgomery County Court of Common Pleas is reversed, and the cause is remanded for further proceedings consistent with this decision.

*Judgment reversed*
*and cause remanded.*

BROGAN and FAIN, JJ., concur.