OPINION
This appeal is taken from a final judgment of the Lake County Court of Common Pleas. Appellant, Joe W. Seals, appeals from his conviction for receiving stolen property following the denial of his motion to suppress.
On April 3, 1998, appellant and a companion were seated in an automobile in the parking lot of the Red Roof Inn in Willoughby, Ohio. The hotel is located in a high crime area of the city due to its proximity to the interstate highway system. At approximately 1:58 a.m., Sergeant Thomas M. Trem ("Sergeant Trem") of the Willoughby Police Department was on routine patrol in the vicinity of the Red Roof Inn. On the night in question, Sergeant Trem was paying specific attention to the hotel because there had been a rash of automobile break-ins and thefts in the surrounding area during the preceding month.
As Sergeant Trem drove through the parking lot of the Red Roof Inn, he observed the vehicle occupied by appellant and the other man. The car was stationed with its headlights off in a dimly lit area of the parking lot. The men were seated in the car, but they were not making any gestures or movements.
Upon observing the vehicle, Sergeant Trem became suspicious and contacted the police dispatcher for the purpose of having a LEADS check run on the license plate number. After calling in the license number, the sergeant began to turn his police cruiser around with the intent of approaching the vehicle in order to inquire why the two men were on the hotel grounds. As Sergeant Trem turned around, however, the vehicle moved from the parking space and began to circle the building. Sergeant Trem activated his overhead lights and initiated a stop.
At the time of the stop, the sergeant had not been notified by the dispatcher regarding the results of the LEADS check. Thereafter, while he was questioning appellant and the other man, Sergeant Trem was advised by the dispatcher that the vehicle was stolen. Based upon this information, Sergeant Trem arrested appellant.
On May 5, 1998, the Lake County Grand Jury indicted appellant on one count of receiving stolen property in violation of R.C.2913.51. Subsequently, appellant filed a motion to suppress all of the evidence flowing from the stop. As grounds for the motion, appellant asserted that Sergeant Trem performed an unconstitutional investigatory stop without any reasonable and articulable suspicion of criminal activity.
The trial court conducted a suppression hearing on June 15, 1998. Sergeant Trem was the only witness to testify at this proceeding. The trial court thereafter allowed the parties to submit written briefs in support of and opposition to the motion to suppress. On July 2, 1998, the trial court denied the motion by judgment entry.
Following the denial of his motion to suppress, appellant pleaded no contest to the charge contained in the indictment, and the trial court entered a finding of guilt. The trial court then sentenced appellant to serve six months in prison with credit for time served.
From this judgment, appellant filed a timely notice of appeal with this court. He now asserts the following assignment of error:
 "The trial court committed reversible error when it denied defendant-appellant's motion to suppress, challenging the stop of his car, where police had no specific and articulable facts upon which to justify their suspicion that criminal activity was imminent."
In his lone assignment of error, appellant posits that the trial court erred by denying his motion to suppress. According to appellant, the incriminating evidence against him was obtained through an unlawful seizure of his person, thereby violating his constitutional rights under the Fourth Amendment to the United States Constitution and Section 14, Article I of the Ohio Constitution.
At a hearing on a motion to suppress, the trial court functions as the trier of fact. As such, the trial court is in the best position to weigh the evidence by resolving factual questions and evaluating the credibility of witnesses. State v. Mills (1992),62 Ohio St.3d 357, 366; State v. Smith (1991), 61 Ohio St.3d 284,288; State v. Depew (1988), 38 Ohio St.3d 275, 277; State v.Fanning (1982), 1 Ohio St.3d 19, 20.
On review, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. State v. Retherford (1994), 93 Ohio App.3d 586, 592;State v. Guysinger (1993), 86 Ohio App.3d 592, 594; State v.Klein (1991), 73 Ohio App.3d 486, 488; Willowick v. Sable (Dec. 12, 1997), Lake App. No. 96-L-189, unreported, at 13. After accepting such factual findings as accurate, the reviewing court must independently determine as a matter of law whether the applicable legal standard has been satisfied. Retherford,93 Ohio App. 3d at 592; Klein, 73 Ohio App.3d at 488.
In the case sub judice, the crux of appellant's position is that the actions taken by Sergeant Trem on April 3, 1998 in the parking lot of the Red Roof Inn were in derogation of the protections afforded by the Fourth Amendment. This provision guarantees the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."[1] By its very terms, the Fourth Amendment is only triggered by a "search" or a "seizure."
In the present case, Sergeant Trem conducted an investigatory stop of appellant. A proper investigatory stop occurs when a police officer justifiably conducts an investigative detention of an individual based upon a reasonable and articulable suspicion that the individual either is currently engaged in criminal activity or is about to engage in such conduct. Retherford,93 Ohio App. 3d at 595-596. An investigatory stop constitutes a seizure for purposes of the Fourth Amendment. See, generally,Terry v. Ohio (1968), 392 U.S. 1. As a result, Sergeant Trem's actions are subject to constitutional scrutiny.
The usual requirements of a search warrant and probable cause are not implicated by such an encounter because an investigatory stop is less intrusive than a formal custodial arrest. State v.Shepherd (1997), 122 Ohio App.3d 358, 364. In light of the limited duration and purpose of the detention, the United States Supreme Court has determined that a police officer's decision to stop an individual must only be supported by a reasonable and articulable suspicion of criminal activity. Shepherd,122 Ohio App. 3d at 364, citing Terry, 392 U.S. 1. Therefore, in order for an investigatory stop to fall within permissible constitutional parameters, the police officer must be able to cite articulable facts that give rise to reasonable suspicion of criminal behavior.
In practice, reasonable suspicion is a somewhat nebulous standard which is not easily defined by courts. It can best be described as requiring more than an inchoate suspicion or a "hunch," but less than the heightened level of certainty required for probable cause. Shepherd, 122 Ohio App.3d at 364, citingState v. Osborne (Dec. 13, 1995), Montgomery App. No. CA15151, unreported, 1995 WL 737913.
There is no bright-line test that lends itself to the determination of whether reasonable suspicion was present. Instead, the Supreme Court of Ohio has mandated that the propriety of an investigatory stop by a police officer must be viewed in light of the totality of the surrounding circumstances. State v.Andrews (1991), 57 Ohio St.3d 86, 87; State v. Bobo (1988),37 Ohio St.3d 177, paragraph one of the syllabus; State v. Freeman
(1980), 64 Ohio St.2d 291, paragraph one of the syllabus.
We turn now to the case at bar. In overruling the motion to suppress, the trial court concluded that Sergeant Trem had reasonable suspicion to perform the investigatory stop of appellant. On appeal, the question is whether the trial court's judgment in this regard was correct as a matter of law.
At the suppression hearing, Sergeant Trem testified that he was an eleven-year veteran of the Willoughby Police Department. In his capacity as a police officer, Sergeant Trem was familiar with the Red Roof Inn and the surrounding area, and he testified that this part of the city is known to be a high crime area. The sergeant further testified that there had been a rash of break-ins and thefts involving automobiles over the month preceding his arrest of appellant on April 3, 1998. Indeed, Sergeant Trem specifically indicated that the majority of these crimes had taken place at the Red Roof Inn.
On the night in question, Sergeant Trem noticed appellant sitting with another male in a vehicle at the Red Roof Inn at approximately 1:58 a.m. The fact that the men were simply sitting in the car aroused the sergeant's suspicions. On direct examination by the prosecutor during the suppression hearing, Sergeant Trem testified as follows:
 "Q. Did you happen to notice what the Defendant and this occupant were doing at this time when you first noticed them?
 "A. When I drove by what I felt was suspicious is they were doing absolutely nothing, they were just sitting in the vehicle.
 "Q. No sudden movement or anything of that nature, Officer?
 "A. No, that's why I though it was odd. Normally when you come into the [Red Roof Inn] parking lot people are either getting in their vehicle or their [sic] leaving to go somewhere, or getting out, getting ready to go to their room. These guys were just doing nothing."
Consequently, Sergeant Trem drove his cruiser by the vehicle in order to obtain the license plate number for purposes of running a LEADS check. Almost immediately after Sergeant Trem drove by in his marked police cruiser, appellant started the vehicle's engine and began to drive away. At that point, the sergeant effected an investigatory stop.
Upon reviewing the totality of the circumstances, we disagree with the trial court's conclusion that Sergeant Trem was justified in making the investigatory detention of appellant. On balance, we conclude that there was not a reasonable basis upon which Sergeant Trem could have believed that appellant intended to engage in criminal activity at the Red Roof Inn.
We arrive at this conclusion for several reasons. First, the Supreme Court of Ohio has expressed the view that an investigatory stop is not justified solely because the detention occurred in a high crime area. See State v. Carter (1994), 69 Ohio St.3d 57,65. Instead, the situs of a stop is simply one factor which can be considered in determining whether reasonable suspicion existed.Id. at 65. As a result, Sergeant Trem's decision to stop the vehicle can not be justified simply because the Red Roof Inn is situated in a high crime area of Willoughby or even because there had been a number of recent automobile thefts and break-ins in that very same hotel parking lot.
Second, furtive movements made by an individual can be a legitimate factor underlying an investigatory stop. Bobo,37 Ohio St. 3d at 179-180. In this case, however, Sergeant Trem testified that appellant did not make any suspicious or shifty movements while sitting in the vehicle. Thus, by the officer's own admission at the suppression hearing, furtive movements could not have contributed in any way to help establish reasonable and articulable suspicion of criminal activity.
Third, the state's reliance on the decision of the Supreme Court of Ohio in Freeman is misplaced. In Freeman, a police officer observed the defendant sitting in a parked automobile while driving through a motel parking lot at 3:00 a.m. on routine patrol. The officer took note of this fact, but at that point in time, he did not possess reasonable suspicion of any criminal activity on the part of the defendant. Consequently, he left the parking lot and continued on patrol. Approximately twenty minutes later, the officer returned to the motel whereupon he saw the defendant still sitting in the parked automobile. When the defendant subsequently attempted to leave the parking lot, the officer stopped him and discovered evidence relating to a crime in the vehicle.
On appeal, the Supreme Court of Ohio determined that the investigatory stop was constitutionally valid in light of the totality of the circumstances. One of the factors that the court relied upon was that the defendant sat alone in the automobile at the back of the motel for at least twenty minutes. Freeman,64 Ohio St. 2d at 295.
We distinguish Freeman from the case sub judice based upon the length of time that the police officer observed the defendant sitting in the parked vehicle. In Freeman, the officer patrolled the motel parking lot on two different occasions separated by twenty minutes. The fact that the defendant was still sitting in the automobile twenty minutes after the officer first observed him was a reasonable basis upon which the officer's suspicion might have become aroused.
In the present case, however, Sergeant Trem only made one pass in his police cruiser through the Red Roof Inn parking lot. Upon doing so, he saw appellant just sitting in a parked vehicle with another passenger. The officer immediately became suspicious and commenced a LEADS check of the license plate number. When appellant simultaneously began to exit the parking lot, the sergeant executed an investigatory detention. Although Sergeant Trem never stated the length of time over which these events took place, it is apparent from reading the transcript of the suppression hearing that the temporal interval was extremely short. In all likelihood, Sergeant Trem stopped appellant within a minute or two of his initial observation of the parked vehicle.
During this brief period of time, Sergeant Trem did not witness appellant or the passenger in the automobile do anything of a suspicious nature. Appellant and the other man were simply sitting in the vehicle. Although the hour was late, it should be noted that the officer was patrolling a hotel parking lot where guests are free to come and go whenever they please.
Based on the totality of the circumstances, therefore, we hold that Sergeant Trem did not have reasonable suspicion of criminal activity at the point in time when he conducted the investigatory stop of appellant. For this reason, the trial court erred in finding the stop to be justified under the Fourth Amendment.
Despite our conclusion that Sergeant Trem did not have reasonable suspicion to effect the investigatory stop, the state correctly points out that the motion to suppress still should not have been granted due to the operation of the inevitable discovery doctrine.[2] This doctrine was established by the United States Supreme Court in Nix v. Williams (1984), 467 U.S. 431.
In Nix, the Court held that illegally obtained evidence should nevertheless be admitted if it inevitably would have been obtained lawfully. Id. at paragraph two of the syllabus. The Court reasoned that if evidence obtained as a result of a constitutional violation would have ultimately been discovered through lawful means, then such evidence should be admissible because its suppression would have no legitimate deterrent effect on illegal police behavior. Id. at paragraphs three and four of the syllabus. Under the inevitable discovery doctrine of Nix, illegally obtained evidence is admissible if the prosecution proves by a preponderance of the evidence that the police would have inevitably discovered it in a lawful manner. Id. at paragraph three of the syllabus.
The Supreme Court of Ohio has adopted the inevitable discovery doctrine:
 "The ultimate or inevitable discovery exception to the Exclusionary Rule is hereby adopted so that illegally obtained evidence is properly admitted in a trial court proceeding once it is established that the evidence would have been ultimately or inevitably discovered during the course of a lawful investigation." State v. Perkins (1985), 18 Ohio St.3d 193, syllabus. See, also, State v. Jackson (1991), 57 Ohio St.3d 29, 36
(applying the inevitable discovery doctrine).
In Ohio, therefore, the inevitable discovery doctrine is appropriately triggered if the prosecution shows within a reasonable probability that police officials would have ultimately discovered the illegally obtained evidence apart from the unlawful conduct. This court has previously applied the doctrine. See, e.g., In re Meeks (Sept. 29, 1995), Lake App. No. 95-L-050, unreported. Other appellate courts have likewise applied the inevitable discovery doctrine. See, e.g., State v. Reddish (Oct. 15, 1999), Montgomery App. No. 17323, unreported, at 21-24, 1999 Ohio App. LEXIS 4836.
In the present matter, it is uncontroverted that Sergeant Trem commenced the process of running the LEADS check on the license plate number of the vehicle occupied by appellant prior to executing the investigatory stop. It was, therefore, inevitable that the sergeant was going to discover that the vehicle was stolen. Even though Sergeant Trem did not yet possess the requisite reasonable suspicion when he stopped the vehicle, the sergeant was undoubtedly going to acquire reasonable grounds upon which to detain appellant. Indeed, the police dispatcher notified Sergeant Trem about the stolen status of the vehicle within minutes of the investigatory stop.
The inevitable discovery doctrine is appropriately triggered only in those instances where there has been an implementation of police investigative procedures that ultimately would have led to the certain discovery of the same evidence. In other words, the investigative procedures must have already been implemented prior to the discovery of the incriminating evidence through unconstitutional means. See State v. Masten (Sept. 29, 1989), Hancock App. No. 5-88-7, unreported, at 8, 1989 WL 111983 (holding that the "circumstances justifying application of the rule are most likely to be present if investigative procedures were already in place prior to the discovery via the illegal means").
In the case at bar, Sergeant Trem was inevitably bound to discover that the vehicle was stolen. Moreover, he commenced the LEADS check prior to effecting the stop of the vehicle. As such, the inevitable discovery doctrine applied even though Sergeant Trem did not have the required reasonable suspicion at the point in time when he actually detained appellant.
Therefore, notwithstanding the Fourth Amendment violation, the trial court properly denied the motion to suppress because the inevitable discovery doctrine applied. As a result, the assigned error is not meritorious.
Based on the foregoing analysis, the assignment of error is not well-taken. Accordingly, the judgment of the trial court is affirmed.
CHRISTLEY, J., concurs with Concurring Opinion,
NADER, J., concurs.
[1] The analogous provision in the Ohio Constitution is found in Section 14, Article I. It provides: "The right of the people to be secure in their persons, houses, papers, and possessions, against unreasonable searches and seizures shall not be violated; * * *."
[2] The state raised this issue before the trial court in its brief opposing appellant's motion to suppress. As a result, the question of the doctrine's applicability was properly preserved for appellate review.