OPINION
This appeal is brought by the State of Ohio pursuant to Crim.R. 12(J) from an order of the court of common pleas sustaining Defendant-Appellant Renier H. Walker's motion to suppress evidence that police had seized from his person in the course of a pat-down search.
At the hearing on Walker's motion to suppress, Dayton Police Officer Stephen Bergman testified concerning the events that led to and resulted in the seizure. Officer Bergman stated that he and Officer Larremore were in their police cruiser on January 14, 1999, when, at 2:15 a.m.,
 "We were traveling west on West Third Street. We could see a red vehicle ahead of us that was accelerating rapidly. We could see that the vehicle was — the distance between our cruiser and the vehicle was widening. We see the vehicle seemed to be going very fast. We had a radar unmounted in our cruiser. We stopped on West Third Street to get a stationary reading on the vehicle that's speeding away from us.
 Stopped the cruiser. Officer Larremore utilized the radar, locked the vehicle in at 50 miles an hour in a 35.
 Q. And once you determined that the defendant was speeding, what did you do then?
 A. We caught up to the vehicle, and the vehicle turned just — south on McGee and pulled to the right.
Q. And did both of you approach the car?
A. Yes.
Q. Was there more than one person in the car?
A. No.
 Q. All right, and so did you have — did you have contact with the driver?
A. Yes, I did.
 Q. Okay, and did he give you his — or shy don't you just tell us what you did?
 A. Okay. I approached the driver. I told him why he was being stopped, asked for his Ohio driver's license and registration. As he spoke to me, I could smell a strong odor of alcohol beverages on his breath.
 Q. And once you smelled that, what did you do at that point?
A. Asked if he had been drinking.
Q. And did he answer you?
A. Yes.
Q. What did he say?
A. He said he had had a few beers.
Q. Based on that, what did you have him do?
A. I had him step out.
Q. Okay, and what did you do next?
 A. We walked back to the rear of his car. I just wanted to check his sobriety, make sure that he wasn't too drunk for driving a vehicle and drinking too much. We both walked to the rear of his cruiser where I could see that his pockets were bulging, and I asked if he minded if I patted him down. He said, "Go ahead."
 Q. Were you about to place him in the rear of your cruiser?
A. Right.
 Q. And is that normal procedure then, to pat somebody down before you place them in the rear of the cruiser?
 A. Yes. We weren't immediately going to put him in the rear of the cruiser. The intention of having him come out was to carry on a conversation, so I could see that his sobriety was okay. Once he was issued a citation, he could drive away without any danger.
 Q. You weren't going to place him in the cruiser as yet, but you were planning on doing so at one point?
A. Yes.
Q. When you saw him walk, was he walking okay?
A. Yeah, seemed to walking pretty well.
 Q. When you asked him if it was okay to pat him down, what did he say?
A. He said, "Go ahead."
Q. And did you do so?
A. Yes.
Q. And what did you feel — find at that point?
 A. When I reached the seat, rear pants area, I could feel a hard rock object in the — in that area that from my past experience in arrests I felt that he was concealing crack cocaine in his pants.
 Q. Okay, that would be — If you recall, was that right in the center of his buttocks or on one or the other side?
 A. That would be pretty good. Right there in the center.
 Q. And once you felt that hard substance, you thought it was what?
 A. I actually told him that I felt he was concealing crack cocaine. I put handcuffs on his wrists, and I told him it was going to have to be removed. He dropped his head and basically said to go ahead and remove it, so I did. I worked it to the top if his waistband and removed it.
 Q. Okay, and did it in fact look like crack cocaine to you?
 A. Yes, it was a clear baggie with crack cocaine inside.
 Q. All right, and after you retrieved that, what did you do next?
 A. I finished my pat-down and discovered in the front of his pants he also had a baggie of marijuana and finished the pat-down and placed him in the rear of the cruiser.
(T. 4-7)
Officer Bergman further testified that he also seized one thousand dollars he found in Walker's pocket and that he cited Walker for speeding. No charges were filed with respect to the marijuana or DUI, however. Officer Bergman also testified to certain admissions made by Defendant-Appellant concerning his purchase of the drugs and plans to use them., Defendant-Appellant Walker moved to suppress the articles seized from his person and the incriminating statements he made. The trial court granted the motion. The State has appealed, and now presents a single assignment of error, stating:
 THE TRIAL COURT ERRED WHEN IT SUSTAINED DEFENDANT'S MOTION TO SUPPRESS CRACK COCAINE FOUND DURING A LAWFUL PATDOWN PERFORMED FOR OFFICER SAFETY.
The trial court held that the warrantless search of the rear area of Walker's pants that yielded the crack cocaine was neither justified by Officer Bergman's concern for his safety nor authorized by the consent that Walker gave.
With respect to the officer's safety concerns, the court reasoned that the bulge Officer Bergman saw in Walker's front pocket did not justify the weapons pat-down of Walker's buttock area that yielded the crack cocaine. Also, the court held, the pat-down was not justified by the officer's intention to place Walker in his police cruiser because he lacked a lawful reason to detain Walker in that manner required by Statev. Evans (1993), 67 Ohio St.3d 405.
With respect to the consent issue, the court held that the consent was invalid because it was given during an investigative detention on a possible DUI for which the officers lacked a reasonable and articulable suspicion. State v. Shepherd (1997), 122 Ohio App.3d 358.
Even if the officers lacked a reasonable and articulable suspicion of a DUI violation, and even if they lacked a lawful reason to put Walker in their cruiser, we believe that the consent Walker gave authorized the search that yielded the crack cocaine.
The stop of Walker's vehicle was justified by the probable cause of a speeding violation created by the events that the officers witnessed.Dayton v. Erickson (1996), 76 Ohio St.3d 3. The officers could then orderWalker to exit his vehicle, even absent any additional suspicion of acriminal violation. Pennsylvania v. Mimms (1977), 434 U.S. 106,98 S.Ct. 330, 54 L.Ed.2d 331. They were not thereby authorized to perform apat-down search. State v. Evans, supra. However, and inasmuch as they had detained Walker to issue a traffic citation, their request to search him was not tainted by a lack of a reasonable and articulable suspicion of a DUI violation. Neither was Walker's response to their request tainted by such a defect. Therefore, his agreement to allow the officers to search his person was not invalid for the reason which the trial court found.
The request that the officers made and Walker's consent to their request was not limited or qualified so as to restrict it to his front pants pocket. Both were open and general, and together they authorized the warrantless search that yielded the evidence which Walker's motion sought to suppress. The trial court erred when it granted the motion.
The assignment of error is sustained. The order from which the appeal was taken will be reversed and the case will be remanded to the trial court for further proceedings.
 __________________ GRADY, P.J.
WOLFF, J. and FAIN, J., concur.