OPINION.
{¶ 1} Defendant, Rederick Works, appeals his conviction for carrying concealed weapons, which was entered on his plea of no contest after the trial court overruled Works' motion to suppress the evidence.
 {¶ 2} Works was indicted on one count of carrying concealed weapons, R.C. 2923.12(A), and one count of having weapons while under disability, R.C. 2923.13(A)(3). Defendant filed a motion to suppress the evidence arguing, among other things, that police lacked the reasonable suspicion of criminal activity necessary to justify their investigative stop of Defendant's vehicle.
 {¶ 3} Following a hearing, the trial court overruled Defendant's motion to suppress. Defendant entered a plea of no contest to the carrying concealed weapons charge in exchange for the State's dismissal of the having weapons under disability charge. The trial court found Defendant guilty and sentenced him to ten months imprisonment.
 {¶ 4} Defendant timely appealed to this court. He challenges the trial court's decision overruling his motion to suppress.
 ASSIGNMENT OF ERROR {¶ 5} "The trial court erred by overruling Mr. Works' motion to suppress evidence discovered as a result of his illegal seizure by the police."
 {¶ 6} Defendant's sole contention in this appeal is that police lacked the reasonable suspicion of criminal activity necessary to justify an investigative stop of his vehicle. Defendant does not challenge, as he did in the trial court, the search of his vehicle or his statements to police, assuming his vehicle was lawfully stopped.
 {¶ 7} In reviewing a trial court's decision on a motion to suppress, we are bound by the trial court's findings of fact if they are supported by competent, credible evidence in the record. Accepting those facts as true, we must independently determine as a matter of law, without deference to the trial court's conclusion, whether they meet the applicable legal standard. State v. Retherford (1994), 93 Ohio App.3d 586,592.
 {¶ 8} The trial court made the following findings of fact in overruling Defendant's motion to suppress:
 {¶ 9} "On February 9, 2002, at approximately 3:15 a.m., Moraine Police Officer Kenneth Lloyd, and other members of the Moraine and Miami Township Police Departments, were dispatched to the Relax Inn which is located on South Dixie Drive. The dispatch was triggered by a call received by the Moraine Police Department. The caller indicated that he was the occupant of Room 52 at the Relax Inn, and that two black males with handguns were trying to enter his room.
 {¶ 10} "Officer Lloyd, and other officers, arrived at the Relax Inn about one minute after the dispatch was received. The officers observed a silver Lincoln automobile occupied by two black males leaving the area of Room 52, and the officers stopped the vehicle. The occupants were removed from the vehicle, and pat down searches for weapons were performed. No weapons were discovered during the pat down searches.
 {¶ 11} "Officer Lloyd then talked to the occupant of Room 52. The Room 52 occupant, whose name was not identified during the hearing, told Officer Lloyd that at least two individuals tried to gain entry into his room. The occupant observed one individual, a bald African-American male holding a semi-automatic handgun, and he knew that a second person was knocking on his door because the bald African-American male was not in a location where he could have been the person knocking on the door. The driver of the Lincoln automobile was a bald African-American male who fit the description supplied by the Room 52 occupant. The driver of the vehicle was Mr. Works.
 {¶ 12} "Sergeant Michael Keegan arrived at the Relax Inn about four minutes after the dispatch was received. Sgt. Keegan visually inspected the Lincoln's interior, and he saw in plain view a silver handgun. The handgun was retrieved, and it turned out to be a BB gun. Sgt. Keenan then conducted a search of the Lincoln's interior, and under the driver's seat he discovered the handgun involved in this case."
 {¶ 13} The trial court held that the investigative stop of Defendant's vehicle by police was reasonable and not violative of the Fourth Amendment. Specifically, the court found that the totality of the circumstances, which includes the call from the occupant of Room 52 to Moraine police that was relayed by the dispatcher to the responding officers, and the fact that the officers arrived at the Relax Inn within a minute of the dispatch and observed a Lincoln with two African-American males leaving the area of Room 52, provided the officers with a reasonable, articulable suspicion of criminal activity sufficient to justify the investigative stop of Defendant's vehicle.
 {¶ 14} The proper test for determining the constitutionality of the stop of Defendant's vehicle is set out in Terry v. Ohio (1968),392 U.S. 1, which allows police officers to stop motorists to investigate a reasonable suspicion of criminal activity. State v. Jordan (October 19, 2001), Montgomery App. No. 18600. Under Terry, the officer must be able to point to specific and articulable facts which, when taken together with inferences rationally drawn from those facts, reasonably warrant the intrusion. Id..
 {¶ 15} Determination of whether reasonable suspicion exists in any given case requires review of the totality of the surrounding facts and circumstances. State v. Bobo (1988), 37 Ohio St.3d 177. Those circumstances must be viewed through the eyes of the reasonable and prudent police officer on the scene who must react to events as they unfold. State v. Andrews (1991), 57 Ohio St.3d 86.
 {¶ 16} At a suppression hearing the State bears the burden of proof that a warrantless search or seizure was reasonable for Fourth Amendment purposes. Maumee v. Weisner, 87 Ohio St.3d 295, 1999-Ohio-68. In the case of an investigative stop, that typically requires evidence that the officer who made the stop was presented with facts sufficient to justify it. Id.
 {¶ 17} When they made the stop in this case, police relied on facts they were given in a police dispatch. In that circumstance, the State must demonstrate that facts created a reasonable suspicion of criminal activity. Id. Here, the facts known to the dispatcher, which came solely from an informant's tip, were relayed by the dispatcher to the responding officers. The question is whether those facts and other circumstances before the officers were sufficient to create a reasonable suspicion of criminal activity justifying the stop. Id.
 {¶ 18} Under a totality of the circumstances approach to determining whether reasonable suspicion exists, both the content of the information possessed by police and its degree of reliability are relevant to the court's determination. Maumee v. Weisner, supra. Where the information possessed by police before the stop stems solely from an informant's tip, the determination of reasonable suspicion is necessarily confined to an examination of the weight and reliability due that tip: whether the tip itself has sufficient indicia of reliability to justify the stop. Id. A telephone tip, standing alone, can create reasonable suspicion justifying an investigatory stop where the tip has sufficient indicia of reliability. Id. Factors considered highly relevant in determining the value of an informant's tip are the informant's veracity, reliability, and basis of knowledge. Id; Illinois v. Gates
(1983), 462 U.S. 213, 230.
 {¶ 19} Weisner noted that informants typically fit into one of three categories: the anonymous informant, the known informant, who is generally someone from the criminal world who has provided reliable tips in the past, and an identified citizen informant. Id., at 300. This latter type of informant is presumed reliable and credible, while an anonymous informant typically is considered relatively unreliable. Therefore, the tip an anonymous informant gives is generally an insufficient basis for a Terry stop. However, such information may create a necessary basis for the stop when the facts related by the informant are corroborated by independent police work. Alabama v. White (1990),496 U.S. 325. An anonymous tip will generally require independent police corroboration. Id.
 {¶ 20} Defendant argues that because the caller here was unknown and must be considered anonymous, the tip or information the caller provided lacked any indicia of reliability and presented no showing as to the informant's veracity, reliability, or basis of knowledge. Therefore, independent police corroboration is required. Absent that, Defendant argues, the anonymous tip does not create reasonable suspicion of criminal activity that an investigative stop requires, per Terry.
 {¶ 21} The trial court rejected Defendant's contentions on a finding that the caller who provided the tip was the occupant of Room 52, and therefore not an anonymous informant. Defendant argues that there is no competent, credible evidence to support the trial court's finding of fact.
 {¶ 22} It appears that the trial court's finding relies on Officer Lloyd's testimony at the suppression hearing concerning his interview of the occupant of Room 52 subsequent to the stop and Defendant's arrest. The occupant of Room 52 told the officer that he had called police with the complaint on which Officer Lloyd and others were dispatched. That is sufficient for the trial court's finding of fact, but it does not resolve the issue of law that Defendant's motion to suppress presented, which is whether the prior stop of the vehicle which led to Defendant's arrest was reasonable for purposes of the Fourth Amendment.
 {¶ 23} Terry permits a warrantless stop if, judged objectively, "the facts available to the officer at the moment of the seizure or the search `warrant a man of reasonable caution in the belief' that the action taken was appropriate." Id. at p. 22, quoting Carroll v. UnitedStates (1925), 262 U.S. 132. Therefore, the totality of the facts and circumstances before the officer when the stop was made is determinative of a Fourth Amendment challenge to a warrantless search or seizure, as this was. Facts gleaned thereafter cannot be used to create the justification necessary to a judicial determination that the particular warrantless search or seizure was reasonable. See Smith v. Ohio (1990),494 U.S. 541, 110 S.Ct. 1288, 108 L.Ed.2d 464.
 {¶ 24} Defendant argues that because the tip in this instance was anonymous and the officers observed nothing more than two men who matched a general description the officers were given, merely driving out of the parking lot, there was not a sufficient basis to find the reasonable and articulable suspicion that Terry requires. Essentially, the argument is that the details the officers observed were too neutral in nature to constitute the necessary corroboration of the tip.
 {¶ 25} We addressed the same argument in State v. Shepherd
(1997), 122 Ohio App.3d 358. There, a motorist who was stopped in a "high crime" area for a muffler violation reported that a woman who was in his car only moments before, had attempted to sell drugs to the driver and his two passengers, but was unable to complete the transaction because she fled when she saw police approaching. The driver gave officers a description of the woman, describing her attire in detail.
 {¶ 26} Officers left the scene after citing the driver for a muffler violation. When they returned to the same location about half an hour later, officers saw a woman matching the description they were given. She was standing in an alley, talking with two men. Officers approached her and said that they needed to ask her some questions, and would have to perform a visual search for weapons. While peering inside the left breast pocket of the woman's coat, officers discovered what appeared to be drugs. The woman removed the article and gave it to an officer, who confirmed that it was drugs. The woman was arrested and subsequently charged with drug abuse.
 {¶ 27} The trial court denied a motion to suppress evidence the officers seized. We reversed on appeal, finding that the corroboration on which the officers relied was insufficient to satisfy the Terry
standards, for several reasons.
 {¶ 28} We noted in Shepherd that the police informant, the driver of the car, admitted that he'd been involved in a drug transaction with the woman the informant described, and because he was "a criminal suspect under police detention, with every incentive to point (officers) in another direction, (the informant's) information should have been regarded with the highest scrutiny." Id., at p. 367. We found that the fact that the woman's clothing matched the description in the tip was so neutral a detail that, without more, it created no reasonable and articulable suspicion. We rejected the State's contention that because the stop occurred in a "high crime" area, that contributed the degree of suspicion required. However, we also noted that even though "the information provided by the informant was not sufficient to constitute reasonable suspicion does not mean that it did not warrant further investigation by law enforcement officers." Id., at p. 369.
 {¶ 29} Here, as in Shepherd, the facts which the officers observed, two men who matched the general description they were given, seen in the same location where the alleged crime or attempted crime had occurred, were essentially neutral in nature. However, these are also important differences.
 {¶ 30} First, unlike the informant in Shepherd, there was no reason to doubt the informant's veracity. The caller was not, so far as the officer knew, involved in any criminal activity relating to the tip. Indeed, the caller wasn't an "informant" at all, at least in the sense of a person who acquired the information because of participation in some criminal activity. The caller was a complainant who asked police for assistance against crime. There was nothing inherent in that which ought to cause officers to doubt what they were told.
 {¶ 31} Second, unlike the half-hour that had passed since the alleged criminal activity in Shepherd, only minutes had passed here after the call was made when the officers arrived on the scene. The fact that the two men were at the location concerned is therefore of more significance, especially in view of the time, 3:15 a.m., and the fact that no one else was about the area.
 {¶ 32} Third, there was no way in which the officers could have conducted the further investigation that in Shepherd we said they might have performed to corroborate the tip before making an investigative stop. The suspect in Shepherd was seen standing in an alley, talking to two men. Further observation might have produced evidence of a drug deal. Here, no further observation was possible because the two men were driving away in an automobile. Had the officers not then stopped them, the two would have avoided any investigation at all. Though lack of probable cause isn't an issue, the mobility factor supports some immediate action that otherwise might not be required. See Carroll v. UnitedStates (1925), 267 U.S. 132.
 {¶ 33} These factors distinguish this case from Shepherd, in which the defendant likewise argued that only neutral factors corroborated the tip officers relied on to perform the stop involved. Factors, though neutral in character, may nevertheless so correspond to the criminal activity suspected, or as in this case reported, that the element of particularity necessary to the articulation of a reasonable suspicion is satisfied. On the totality of the facts and circumstances available to the officers "at the moment of the seizure," Terry, we conclude that the stop they performed was based on a reasonable and articulable suspicion of criminal conduct on the part of the two men whom they stopped. Terry. Therefore, the trial court did not err when it denied Defendant's motion to suppress.
 {¶ 34} The assignment of error is overruled. The judgment of the trial court will be affirmed.
BROGAN, J. and YOUNG, J., concur.