OPINION
{¶ 1} Ayo Wa-Tenza appeals from his conviction and sentence following a no-contest plea to one count of carrying a concealed weapon. In his sole assignment of error, Wa-Tenza contends the trial court erred in denying his motion to suppress a handgun found in his possession.
 {¶ 2} The facts of the present appeal are undisputed. The sole witness at the suppression hearing was Michael Saylor, a Dayton police officer. Saylor testified that shortly after 4:00 a.m. on a Sunday, he and his partner were dispatched to Chicken Louie's restaurant on North Main Street in Dayton. The dispatch concerned occupants of a maroon-colored vehicle allegedly pulling guns and knives on an individual. (Tr. at 4-5).
 {¶ 3} Upon arriving at Chicken Louie's, Saylor failed to locate the maroon vehicle. However, he did observe 100 to 150 people loitering in the parking lot. Saylor explained that the Dayton Police Department previously had received numerous complaints about large crowds in the parking lot firing guns and creating excessive noise. Saylor himself had made prior arrests there for "loitering, guns, [and] warrants." As a result, he and several other officers decided to remain on the scene to maintain the peace and to attempt to disperse the crowd. (Id. at 6, 22).
 {¶ 4} Approximately an hour later, the crowd had dwindled to about seventy-five people. At that time, a white Mercury Sable turned into the parking lot from Main Street and stopped, blocking the sidewalk. Saylor watched as occupants of the Sable talked to occupants of a red pick-up truck that was stopped alongside the Sable. After thirty to forty-five seconds, another officer motioned for the Sable to move on into the parking lot because it was impeding traffic on Main Street. After initially failing to comply, the driver of the Sable proceeded into the parking lot and stopped. Two police officers then walked toward the driver's side of the vehicle. At the same time, Saylor approached the passenger side, where appellant Wa-Tenza already had exited the vehicle. When Wa-Tenza saw Saylor approaching, he turned around and immediately went to the rear window of a car next to him. He leaned into the window and appeared to be "reaching for stuff from his body, getting stuff that he was pulling from his body into that parked vehicle[.]" (Id. at 7-11, 21).
 {¶ 5} Wa-Tenza's actions caused Saylor to suspect that he was "ditching contraband or ditching a weapon." At that point, Saylor decided to do an "investigator[y] talk." Saylor twice asked Wa-Tenza to place his hands on the car he had just exited. Rather than complying, Wa-Tenza kept reaching down toward his mid-section. As a result, Saylor placed Wa-Tenza's hands on the car and conducted a pat-down that revealed a loaded pistol halfway in his pants. The officer also looked inside the rear window of the vehicle Wa-Tenza had leaned into but could not see any contraband in plain view. (Id. at 11-14).
 {¶ 6} Based on the foregoing facts, Wa-Tenza was charged with one count of carrying a concealed weapon. He entered his no-contest plea after the trial court denied a motion to suppress. On appeal, he argues that Saylor lacked a reasonable, articulable suspicion of criminal activity to justify the investigatory detention or the pat-down search. Having reviewed the transcript of Wa-Tenza's suppression hearing, we are unpersuaded by either argument.
 {¶ 7} A police officer may conduct an investigatory detention of an individual without violating the Fourth Amendment if the officer has a reasonable suspicion that the individual is engaged in criminal activity. State v. Shepherd (1997), 122 Ohio App.3d 358, 364, citing Terry v. Ohio (1968), 392 U.S. 1, 30. Reasonable suspicion has been defined as something more than an inchoate or unparticularized suspicion or hunch, but less than the level of suspicion required for probable cause. Id. "The propriety of an investigative stop by a police officer must be viewed in light of the totality of the surrounding circumstances." State v. Bobo (1988), 37 Ohio St.3d 177, paragraph one of syllabus. The totality of the circumstances must "be viewed through the eyes of the reasonable and prudent police officer on the scene who must react to events as they unfold." State v. Andrews (1991), 57 Ohio St.3d 86,87-88.
 {¶ 8} In the present case, the circumstances support the trial court's conclusion that Saylor reasonably suspected Wa-Tenza of engaging in criminal activity. The encounter between Saylor and Wa-Tenza occurred around 4:00 a.m. in a known trouble spot where Dayton police regularly received complaints of gunfire and where Saylor had made prior weapons-related arrests. In addition, Wa-Tenza acted suspiciously when, upon seeing the officer, he immediately turned the other way, leaned his body into someone else's car, and appeared to be removing items from his body and placing them in the vehicle. In our view, these facts were sufficient to create a reasonable suspicion that Wa-Tenza was trying to conceal something of a criminal nature. As a result, Saylor acted within the bounds of Terry, supra, when he briefly detained Wa-Tenza to investigate.
 {¶ 9} Wa-Tenza also argues that the trial court should have suppressed the handgun found in his possession because Saylor lacked reasonable, articulable suspicion to search him. Once again, we disagree. "Where a police officer, during an investigative stop, has a reasonable suspicion that an individual is armed based on the totality of the circumstances, the officer may initiate a protective search for the safety of himself and others." Bobo, supra, at paragraph two of syllabus.
 {¶ 10} In the present case, Saylor had a reasonable suspicion that Wa-Tenza was armed and posed a danger to his safety. The record reflects that Saylor's pat-down search occurred after Wa-Tenza twice ignored the officer's instruction to keep his hands on the car. Rather than complying with this instruction, Wa-Tenza kept reaching for his mid-section. This action gave Saylor a reasonable basis to fear that Wa-Tenza might have a weapon and to conduct a pat-down search for his safety.
 {¶ 11} In opposition to the foregoing conclusion, Wa-Tenza suggests that Saylor had decided to do a pat-down even before he reached for his mid-section. The fact remains, however, that Saylor neither conducted the pat-down nor expressed an intention to do so until after Wa-Tenza repeatedly reached toward the area where Saylor found the handgun. Consequently, regardless of Saylor's subjective intent when he approached Wa-Tenza, the appellant's own actions provided the officer with reasonable suspicion to justify the pat-down before it occurred. As a result, the pat-down did not violate the Fourth Amendment.
 {¶ 12} The appellant's assignment of error is overruled, and the judgment of the Montgomery County Common Pleas Court is affirmed.
Grady, J., and Young, J., concur.