OPINION
On August 25, 2000, defendant, Donald L. Parrish, was indicted by a Franklin County Grand Jury on one count of carrying a concealed weapon in violation of R.C. 2923.12. On September 18, 2000, defendant filed a motion to suppress the weapon found in his vehicle on the grounds that his constitutional rights had been violated.
A hearing on defendant's motion to suppress was held on January 31, 2001,[1] at which the following evidence was adduced. At 3:44 a.m. on July 22, 2000, Columbus Police Officer David Myers was dispatched to the area of East Fifth and Brentnell Avenues on a call of "shots fired." (Tr. 5.) The radio dispatch provided no other details other than the location of "Fifth and Brentnell." (Tr. 11.) Because Officer Myers had been called to a row of adjoining apartments located in that area (2006-2012 East Fifth Avenue) many times previously on narcotics and/or gun-related activity, he assumed that the gunshots had been fired from the vicinity of the East Fifth Avenue apartments. (Tr. 4.)
Officer Myers arrived at the location within one minute of receiving the dispatch. At that time, he noticed defendant's vehicle pulling out of a parking space in front of 2008 East Fifth Avenue. There was no other traffic in the area. Although he did not observe defendant violate any traffic laws, Officer Myers "initiated a traffic stop," (Tr. 12), blocking defendant's vehicle with his police cruiser to prevent defendant from driving away. Officer Myers remained in his cruiser while he awaited the arrival of additional officers. When defendant attempted to exit his vehicle, Officer Myers instructed him via his cruiser's external microphone to remain inside. Defendant followed Officer Myers' instructions and remained inside the vehicle.
Upon the arrival of several additional officers, including Officers Berb, Poliseno, and Davis, Officer Myers exited his cruiser, briefed the other officers on the situation, and approached defendant's vehicle. Officer Myers ordered defendant out of the vehicle, placed defendant's hands behind his back, and patted him down. No weapons were found as a result of the pat-down. According to Officer Myers, defendant was not under arrest at this juncture; however, defendant was not free to leave. Officer Myers then placed defendant in the back of his cruiser for the safety of defendant and others.
At some point, Officer Berb looked inside the passenger side of defendant's vehicle and noticed an open liquor bottle on the passenger seat. (Tr. 8, 17.) Officer Myers offered conflicting testimony as to precisely when Officer Berb discovered the liquor bottle. On direct examination, Officer Myers testified that the bottle was not discovered until after defendant was secured in the back of his cruiser. On cross-examination, however, Officer Myers stated that Officers Berb and Poliseno began looking inside defendant's vehicle at the same time Officer Myers was patting defendant down. (Tr. 17, 21.) In any event, Officer Berb voiced his discovery to Officer Poliseno, who then searched the driver's side of the vehicle. (Tr. 8.) Officer Poliseno's search revealed a loaded .9 mm weapon under the driver's seat. (Tr. 8.) Shell casings matching those remaining in the weapon were found outside 2006 East Fifth Avenue, approximately fifty feet from where defendant had been stopped. After the weapon was retrieved from the vehicle, Officer Myers placed defendant under arrest.
When asked by the prosecutor whether there was any information provided at the scene that led him to suspect that defendant had fired the gunshots, Officer Myers averred that a helicopter aired that "they saw that vehicle in the area of the shots fired and no one around." (Tr. 6.) On cross-examination, Officer Myers stated that he could have received the information from the helicopter at any time after he stopped defendant's vehicle, including after the vehicle had already been searched. (Tr. 22.)
Officer Myers also testified that sometime after Officer Davis arrived on the scene, a neighbor told Officer Davis that defendant had been shooting a gun. (Tr. 6-7.) On cross-examination, Officer Myers stated that the discussion between Officer Davis and the neighbor did not occur until after the weapon had been found inside the car. (Tr. 20.) On re-direct, he stated that he could not recall whether the discussion with the neighbor occurred prior to or after the search for the weapon had commenced. (Tr. 23.)
Officer Poliseno corroborated Officer Myers' testimony that the radio dispatch indicated only that shots had been fired in the area of East Fifth and Brentnell Avenues. He further testified that he had on numerous occasions been to the apartment buildings located at 2006-2012 East Fifth Avenue on calls involving shootings and/or shots fired. Officer Poliseno further averred that Officer Berb's discovery of the liquor bottle on the front passenger seat provided probable cause to search the rest of the vehicle, including under the driver's seat. (Tr. 29.)
Subsequent to the suppression hearing, the trial court overruled defendant's motion. On April 24, 2001, defendant entered a no contest plea to the charge of carrying a concealed weapon, and the court found him guilty. Defendant was thereafter sentenced to a six-month term of incarceration at the Ohio Department of Rehabilitation and Correction. Appellant timely appeals, setting forth two assignments of error:
 [1.] The Trial Court erred in filing its final judgment entry wherein the Trial Court erroneously indicates the Defendant entered a "guilty" plea to the indictment, when in fact Defendant actually entered a "no contest" plea to the indictment.
 [2.] The Trial Court erred in overruling defendant's motion to suppress the evidence obtained from the stop, and arrest of Appellant, along with the evidence arising out of the unconstitutional search of Appellant's vehicle in violation of Appellant's rights under the Fourth Amendment to the United States Constitution, and Article I, Section Fourteen of the Ohio Constitution.
By the first assignment of error, defendant contends that the trial court's June 29, 2001 judgment entry erroneously indicates that defendant pled guilty, rather than no contest, to the charge of carrying a concealed weapon. Upon review of the record, we note that the trial court filed a corrected entry on January 30, 2002, which properly states that defendant entered a no contest plea to the charge of carrying a concealed weapon. Accordingly, this assignment of error is now moot and we need not address it. App.R. 12(A).
By the second assignment of error, defendant contends that the stop and search of his vehicle violated his rights under the Fourth Amendment to the United States Constitution and Section 14, Article I, Ohio Constitution. Specifically, defendant contends that the concealed weapon discovered under the driver's seat of his vehicle must be suppressed because: (1) there were no specific, articulable facts to justify the initial stop of his vehicle; and (2) even if there were specific articulable facts to justify the initial stop, the subsequent search of his vehicle was unconstitutional. The state contends that under the totality of the circumstances, Officer Myers was justified in stopping defendant, and that the subsequent search of his vehicle was properly conducted pursuant to that investigative detention.
Preliminarily, we note that in a hearing on a motion to suppress, the trial court assumes the role of trier of fact and, as such, is in the best position to resolve questions of fact and evaluate the credibility of witnesses. State v. Retherford (1994), 93 Ohio App.3d 586, 592. A reviewing court is bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. Id. After accepting such factual findings as accurate, the reviewing court must determine independently, as a matter of law, whether the facts meet the appropriate legal standard. Id.
The Fourth and Fourteenth Amendments to the United States Constitution, as well as Section 14, Article I, Ohio Constitution, prohibit any governmental search and seizure, including a brief investigatory stop by a police officer, unless supported by objective justification. State v. Andrews (1991), 57 Ohio St.3d 86, 87, citing Terry v. Ohio (1968), 392 U.S. 1, 19, 88 S.Ct. 1868. In order to justify a brief investigatory stop or detention of an individual pursuant to Terry, a police officer must be able to cite specific and articulable facts which, taken together with rational inferences derived from those facts, give rise to a reasonable suspicion that the individual is engaged or about to be engaged in criminal activity. State v. Williams (1990),51 Ohio St.3d 58, 60.
The "reasonable suspicion" necessary for an investigative police stop of a motorist eludes precise definition. Maumee v. Weisner (1999),87 Ohio St.3d 295, 299. "Reasonable suspicion" has been described as "requiring more than an inchoate suspicion or a `hunch,' but less than the heightened level of certainty required for probable cause." State v. Seals (1999), Lake App. No. 98-L-206, citing State v. Sheperd (1997),122 Ohio App.3d 358, 364.
No bright-line test lends itself to the determination of whether reasonable suspicion is present. Seals, supra. Instead, the Ohio Supreme Court has held that "[t]he propriety of an investigative stop by a police officer must be viewed in light of the totality of the circumstances." State v. Bobo (1988), 37 Ohio St.3d 177, paragraph one of the syllabus, following State v. Freeman (1980), 64 Ohio St.2d 291. "[T]he circumstances surrounding the stop must `be viewed through the eyes of a reasonable and cautious police officer on the scene, guided by his experience and training.'" Bobo, at 179, quoting United States v. Hall (C.A.D.C. 1976), 525 F.2d 857, 859.
In overruling defendant's motion to suppress, the trial court determined that Officer Myers had reasonable suspicion to stop defendant's vehicle. Specifically, the trial court cited the "shots fired" radio dispatch; the time (3:44 a.m.); Officer Myers' familiarity with the area, including the fact that he had been on numerous runs involving shots fired in the vicinity of the apartment building; and the fact that defendant's vehicle was the only one in the area at the time Officer Myers arrived on the scene. On appeal, the question is whether the trial court's judgment in this regard was correct as a matter of law.
Upon review of the totality of the circumstances in the instant matter, we disagree with the trial court's conclusion that Officer Myers was justified in making the investigative stop of defendant. In State v. Rhude (1993), 91 Ohio App.3d 623, a police officer stopped Rhude at 1:30 a.m. after observing him pull into a driveway, turn around, drive back onto the road in the opposite direction, and pull into another driveway. The officer testified that although he did not observe Rhude violate any traffic laws, he stopped Rhude's vehicle because the police had received several complaints concerning prowlers and burglaries in the area. The Rhude court held that where a motorist is not observed violating any traffic or other laws and where the police are not specifically looking for that particular individual or the vehicle which the individual is driving, they lack reasonable suspicion to stop the motorist. Id. at 626. Although we are aware that the circumstances of the instant case are more compelling than those in Rhude, we find that Officer Myers lacked reasonable suspicion to stop defendant because he did not observe him violating any traffic or other laws, and the police were not looking for defendant or the vehicle defendant was driving.
Furthermore, "[w]here an officer making an investigative stop relies solely upon a dispatch, the state must demonstrate at a suppression hearing that the facts precipitating the dispatch justified a reasonable suspicion of criminal activity." Maumee v. Weisner, supra, paragraph one of the syllabus. The transcript of the suppression hearing contains no information concerning the radio dispatch, other than it included a statement that shots had been fired in the area of East Fifth and Brentnell Avenues. The state did not establish that the dispatch included any specific details, such as where the information precipitating the dispatch originated, the precise time the shots had been fired, whether the shots had been fired from a vehicle and, if so, whether defendant's vehicle had been observed in the area, whether defendant had been specifically identified as a possible perpetrator of the crime, or whether the shots had been fired from the apartment building where defendant was parked when Officer Myers stopped him.
Since the state failed to establish the underlying factual basis for the radio dispatch, the reasonableness of the investigative stop depended upon whether Officer Myers independently observed circumstances reasonably indicating criminal behavior at the scene of the detention. State v. Johnson (1990), Cuyahoga App. No. 58344. In this case, there were no circumstances indicating criminal behavior at the scene prior to Officer Myers' detention of defendant. Officer Myers testified only that he observed defendant's car pulling away from the apartment building.
Thus, the totality of the circumstances in the instant case, including the very limited details provided in the radio dispatch and defendant's mere presence in the general vicinity where the shots allegedly had been fired, do not provide a reasonable, articulable suspicion that defendant had engaged in criminal activity to justify an investigative stop.
Assuming, arguendo, that Officer Myers' investigative stop of defendant was proper, we conclude that the subsequent search of defendant's vehicle was unlawful. "[S]earches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under theFourth Amendment, subject only to a few specifically established and well-delineated exceptions." State v. Hines (1992), Washington App. No. 90 CA 42, quoting Katz v. United States (1967), 389 U.S. 347, 357,88 S.Ct. 507; see, also, State v. Hines (1993), 92 Ohio App.3d 163, 166. Those seeking exemption from the warrant requirement bear the burden of establishing the applicability of one of the recognized exceptions. State v. Lowry (1997), Ross App. No. 96CA2259, citing United States v.Jeffers (1951), 342 U.S. 48, 51, 72 S.Ct. 93.
One of the exceptions to the general rule is found in Terry, supra. In Terry, the United States Supreme Court held that a police officer may pat down an individual for weapons where there is a reasonable belief that the safety of the police officer or others is jeopardized. Id. at 24. The Supreme Court's holding in Terry has been expanded to include automobile stops. State v. Henderson (1997), Montgomery App. No. 16016. For his or her own safety, a police officer may frisk the occupants of a vehicle for weapons if there is a reasonable belief that the occupants may be armed. Id. Similarly, Terry has been extended to include a protective search of the vehicle when the officer has a reasonable suspicion that the suspect is dangerous and may gain immediate control over weapons inside the vehicle. Id., citing Michigan v. Long (1983),463 U.S. 1032, 1048-1049, 103 S.Ct. 3469. The Ohio Supreme Court has held that "[w]here a police officer, during an investigative stop, has a reasonable suspicion that an individual is armed based on the totality of the circumstances, the officer may initiate a protective search for the safety of himself and others." Bobo, supra, at paragraph two of the syllabus. Such a search is permissible "based upon the officers' particularly vulnerable position existing because a full custodial arrest has not been effected and the individual may be permitted to reenter his vehicle before the investigation is over." State v. Oliver (1993),91 Ohio App.3d 607, 610.
Turning to the instant case, we find that the search of defendant's vehicle by Officers Berb and Poliseno was not justified as a protective search under Long or Bobo. The purpose of this exception to the warrant requirement is to allow a police officer to protect himself or herself where the officer reasonably suspects that the individual is dangerous and may gain immediate control over a weapon. Henderson, supra. In the instant case, defendant was patted down at the time Officer Myers ordered him to exit his vehicle. No weapons were found. Officer Myers then placed defendant in the back of his police cruiser. There was no danger that defendant would gain immediate control over a weapon hidden under the front seat of the vehicle because Officer Myers had secured defendant in his police cruiser, and defendant was unable to exit the cruiser.
Further, there is no testimony suggesting that the police officers had determined that they were going to permit defendant to re-enter the vehicle. A police officer may search the interior of a vehicle when the officer reasonably suspects that the individual has a weapon concealed in the vehicle, and the officer has made the determination that he or she is going to permit the individual to return to the vehicle. Id. In such a case, a search for the officer's safety is justified because the officer has confirmed that he or she is going to permit the individual to re-enter the vehicle wherein the individual could gain immediate control over a weapon. However, until a police officer has finally decided to return the individual to the vehicle, safety reasons cannot be used to justify the search. Id.
Furthermore, we cannot agree with the state's contention that the search was valid pursuant to the "automobile exception" to the warrant requirement. This exception permits the warrantless search of a vehicle "if there is probable cause to believe that the vehicle contains contraband or other evidence that is subject to seizure, and exigent circumstances necessitate a search or seizure." State v. Mills (1992),62 Ohio St.3d 357, 367. In the context of an automobile search, probable cause has been defined as "* * * a belief, reasonably arising out of circumstances known to the seizing officer, that an automobile or other vehicle contains that which by law is subject to seizure and destruction." State v. Kessler (1978), 53 Ohio St.2d 204, quoting Carroll v. United States (1925), 267 U.S. 132, 149, 45 S.Ct. 280. This probable cause standard requires specific, objective facts which would justify the issuance of a search warrant by a judge or magistrate. Hines, supra, citing United States v. Ross (1982), 456 U.S. 798,102 S.Ct. 2157.
In the instant case, the trial court did not find that probable cause existed to justify the search. Rather, the trial court expressly extended the Terry "reasonable suspicion" test to the search of the vehicle. Indeed, defense counsel asked the trial court to clarify its ruling, i.e., whether the search qualified under the probable cause exception to the warrant requirement under Carroll, supra. The court found that the police officers had reasonable suspicion, not probable cause, to both stop defendant and search his vehicle. Indeed, the court stated that "[i]f I can't take the reasonable Terry intermediate response to the weapon itself, the weapon's out." (Tr. 44.) Thus, it is clear that the court applied a reasonable suspicion test to the search of defendant's vehicle. However, the test under Carroll is not one of "reasonable suspicion," but one of "probable cause."
In the instant case, it is clear that at the time the officers searched the vehicle, they did not have probable cause to suspect that the vehicle contained a weapon. The evidence of record supports the trial court's factual findings that the helicopter did not relay any information to the police officers, nor did the neighbor identify defendant as the person who fired the gunshots, until after the weapon had been found. Accordingly, at the time the vehicle was searched, the police had no specific information giving them probable cause to suspect that the vehicle contained a weapon. The only information the police had at the time of the search was the radio dispatch stating that shots had been fired in the area and that defendant had been stopped because he was the only person in the area when Officer Myers arrived on the scene.
Furthermore, contrary to the state's contention, the officers' discovery of the liquor bottle did not provide probable cause to search the rest of the vehicle. Preliminarily, we note that the trial court found the discovery of the liquor bottle to be of no significance, given that the evidence established that the officers initiated the search for the sole purpose of finding a weapon. Furthermore, the trial court determined that the search was valid, with or without discovery of the liquor bottle, under the Terry reasonable suspicion test. As noted above, we do not agree with the trial court's extension of Terry to the search of defendant's vehicle. However, we must accept the court's factual finding that the officers searched the vehicle for a weapon, as that finding is supported by competent, credible evidence. As noted previously, the evidence of record does not establish that the police had probable cause to search the vehicle for a weapon.
However, the state's failure to establish that the protective search and probable cause exceptions to the warrant requirement justified the search does not end our analysis. Subsequent to oral argument in this case, the Ohio Supreme Court decided State v. Murrell (2002),94 Ohio St.3d 489, wherein the court adopted the bright line test regarding automobile searches following a lawful arrest from New York v. Belton (1981), 453 U.S. 454, 101 S.Ct. 2860. Specifically, the Murrell court held that "[w]hen a police officer has made a lawful custodial arrest of the occupant of an automobile, the officer may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile." Id. at syllabus. Given the court's holding in Murrell, we must determine whether the search of the passenger compartment of defendant's vehicle was made pursuant to a lawful arrest.
We agree with defendant's contention that he was under arrest at the time he was placed in the back of the police cruiser. Officer Myers' subjective belief that he was not arresting defendant when he put him in the back of his cruiser is not controlling herein. The constitutional test for determining when a seizure, of which an arrest is one type, has occurred is expressed in objective rather than subjective terms. State v. Pettry (1990), Jackson App. No. 617, citing Florida v. Royer (1983),460 U.S. 491, 103 S.Ct. 1319. A seizure becomes an arrest rather than a Terry detention if a reasonable person in the suspect's position would have understood the situation to constitute a restraint on freedom of movement of the degree which the law associates with formal arrest. Id., citing United States v. Colrral-Franco (C.A.5, 1988), 848 F.2d 536.
In this case, shortly after defendant's vehicle was stopped and prior to the search of the vehicle, defendant was placed in the back of the cruiser. There is no indication in the record that he was thereafter ever free to leave. Indeed, Officer Myers testified that defendant was not free to leave. Under the circumstances herein, any reasonable person in defendant's position would have understood the situation to constitute a restraint on his freedom of movement of the degree associated with a formal arrest.
Having determined that defendant was arrested at the time he was placed in the cruiser, we must next determine whether such arrest was lawful. If the arrest was lawful, the search incident to that arrest was valid under Murrell. In contrast, if the arrest was unlawful, Murrell is inapplicable.
The constitutional issue for Fourth Amendment purposes is whether Officer Myers had probable cause to arrest defendant. The probable cause needed to make a warrantless arrest for a felony not committed in the presence of a police officer requires that the arresting officer, at the moment of the arrest, have sufficient information, based on facts and circumstances within his or her knowledge or derived from a reasonably trustworthy source, to warrant a prudent person in believing that an offense has been committed by the accused. State v. Ingram (1984),20 Ohio App.3d 55, 57.
We do not believe that at the time Officer Myers arrested defendant, he had sufficient information, based on facts and circumstances within his knowledge or derived from a reasonably trustworthy source, to warrant a reasonable belief that defendant had committed an offense. At the moment of arrest, Officer Myers knew nothing more than he did when he initiated the investigative stop — that shots had been fired in the general area where he had observed defendant's vehicle and that defendant's vehicle was the only one in the area. Officer Myers had not yet obtained any further information from either the helicopter or the neighbor. Under the circumstances herein, we cannot conclude that Officer Myers had probable cause to arrest defendant. Having determined that the arrest was unlawful, the search was not justified under Murrell.
Finally, we consider the state's contention that the physical evidence seized by the officers is admissible pursuant to the inevitable discovery doctrine. Preliminarily, we note that the state did not raise this issue before the trial court in either its brief opposing defendant's motion to suppress or at the suppression hearing, nor did the trial court rely upon the doctrine when overruling defendant's motion. However, in the interests of justice, we will address it.
The inevitable discovery exception to the Exclusionary Rule permits admission of evidence that was obtained illegally if it is established that the evidence would have been inevitably discovered during the course of a lawful investigation. State v. Perkins (1985), 18 Ohio St.3d 193, syllabus. The burden is on the state to demonstrate, within a reasonable probability, that the police would have ultimately discovered the illegally obtained evidence apart from the unlawful conduct. Id. at 196. In order for the inevitable discovery exception to apply, the state must establish that "the police possessed the leads making the discovery inevitable at the time of the misconduct and that the police were actively pursuing an alternate line of investigation prior to the misconduct." State v. Taylor (2000), 138 Ohio App.3d 139, 151, citing State v. Wilson (1994), 97 Ohio App.3d 333, 335.
The state has failed to establish applicability of the inevitable discovery doctrine to the instant case. The state contends that the information obtained from the helicopter and the neighbor would have inevitably led to the discovery of the weapon. Specifically, the state argues that even if the officers had not obtained the information from the helicopter and the neighbor prior to the search, they obtained it during or immediately after the search. The state's argument suggests a misunderstanding of the inevitable discovery doctrine. As previously mentioned, in order for the inevitable discovery doctrine to apply, the state must establish that the police possessed the lead making discovery inevitable at the time of the misconduct, and that they were actively pursuing an alternative line of investigation prior to the misconduct, not during or immediately after the search as the state contends. Further, as noted previously, the trial court made a factual finding, which is supported by the evidence of record, that the police did not obtain the information from the helicopter and the neighbor until after the search had been conducted and the weapon had been discovered. Thus, the state has failed to establish that the police possessed the leads making discovery of the weapon inevitable at the time of the misconduct and that they were actively pursing an alternative line of investigation prior to the time of the misconduct.
Because we have determined that the police officers involved in the instant matter illegally detained defendant and/or searched his vehicle and that the evidence seized as a result of this misconduct would not have been inevitably discovered, we find defendant's second assignment of error to be well-taken.
For the foregoing reasons, we overrule defendant's first assignment of error as moot and sustain defendant's second assignment of error. The judgment of the Franklin County Court of Common Pleas is reversed, and this cause is remanded to that court for further proceedings in accordance with law and consistent with this opinion.
Judgment reversed and cause remanded.
BRYANT, J., concurs.
LAZARUS, J., concurs in judgment only.
[1] The transcript of the suppression hearing is erroneously dated January 31, 2000.