[Cite as *State v. Malkin*, 2020-Ohio-3059.]

COURT OF APPEALS
LICKING COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | Hon. W. Scott Gwin, P.J. |
| Plaintiff-Appellee | : | Hon. Craig R. Baldwin, J. |
| | : | Hon. Earle E. Wise, Jr., J. |
| -vs- | : | |
| | : | |
| VITALIY MALKIN | : | Case No. 2019 CA 0100 |
| | : | |
| Defendant-Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING:     Appeal from the Licking County
                             Municipal Court, Case No.
                             19TRC01777

JUDGMENT:                    Affirmed

DATE OF JUDGMENT:            May 21, 2020

APPEARANCES:

For Plaintiff-Appellee                  For Defendant-Appellant

J. MICHAEL KING                         ROGER SOROKA
40 West Main Street                     JOSHUA BEDTELYON
Fourth Floor                            503 South Front Street
Newark, OH 43055                        Suite 205

Columbus, OH  43215

*Wise, Earle, J.*

{¶ 1}   Defendant-Appellant Vitaliy Malkin appeals the May 8, 2019 judgment of the Licking County Municipal Court denying his motion to suppress, and the Licking County Municipal Court's October 7, 2019 judgment of conviction and sentence. Plaintiff-Appellee is the state of Ohio.

## FACTS AND PROCEDURAL HISTORY

{¶ 2}   On February 25, 2019 at approximately 7:30 p.m., Brittney Meadows was stopped at a traffic light at the intersection of State Route 40 and State Route 310 when Appellant rear-ended her vehicle. Meadows estimated Appellant was traveling at 15-20 miles per hour when he struck her car.

{¶ 3}   Meadows got out of her car to inspect the damage, which was minor. Appellant rolled down the window of his vehicle to speak with Meadows and Meadows immediately noted the odor of alcohol. Appellant accused Meadows of backing into his vehicle.

{¶ 4}   Meadows noted Appellant had a foreign accent and was slurring his words. While they waited for police to arrive, Appellant gave Meadows his driver's license, but otherwise refused to answer any of her questions such as whether he had insurance and whether the car he was driving belonged to him or his employer. He did not appear to have any difficulty understanding her. While they waited for police, appellant made several phone calls. During each call appellant spoke in a foreign language. When Appellant spoke with Meadows, however, he spoke English.

{¶ 5}   Appellant asked Meadows several times to drive to Conway Motors with him. He further kept trying unsuccessfully to remove the dealer license plate from his car.

When Meadows refused to follow appellant to Conway Motors, Appellant got back in his car and made another phone call.

{¶ 6}   Ohio Highway Patrol Trooper Jason Bell arrived on the scene to find Appellant seated in his vehicle and Meadows standing outside of hers. Bell spoke with Meadows first. She stated Appellant rear-ended her vehicle and smelled of alcohol.

{¶ 7}   Bell approached Appellant and noted Appellant fumbling a lit cigarette. Bell further noted Appellant's eyes were glassy and bloodshot, and there was a strong odor of alcohol coming off Appellant's person. Bell asked Appellant what happened and Appellant claimed Meadows backed into him. Bell noted Appellant's breath also smelled strongly of alcohol.

{¶ 8}   Asked if he had been drinking Appellant stated he had two beers at 3:00 p.m. He later stated 4:00 p.m. Bell asked Appellant for his operator's license and Appellant had some difficulty retrieving the same. Based on his observations, Bell conducted field sobriety testing. Before conducting horizontal gaze nystagmus (HGN), Bell determined Appellant had no recent head injury, ear or eye infections, did not wear glasses or contacts, and takes a drug for anxiety. Appellant exhibited 6 of 6 clues on the HGN.

{¶ 9}   Before asking Appellant to perform the walk and turn test, Bell asked Appellant if he had any physical challenges. Appellant responded he has a bad back, but that this issue would not prevent him from executing the test. Appellant exhibited 4 of 8 clues on the walk and turn test.

{¶ 10} Finally, Bell asked Appellant to perform the one-legged stand test. Appellant exhibited 1 of 4 clues on this test.

{¶ 11} Appellant declined to recite the alphabet or count backwards.

{¶ 12} Based on his observations, Bell believed Appellant was impaired and would register .08 or higher on a breath test. Appellant was therefore taken into custody.

{¶ 13} Appellant later refused a breath test. A review of Appellant's BMV record revealed a previous conviction for operating a vehicle under the influence of alcohol (OVI) in Fairfield County Ohio on June 3, 2016.

{¶ 14} Appellant was subsequently charged with OVI, refusing a chemical test with a prior conviction within 20 years, and assured clear distance ahead.

{¶ 15} Appellant pled not guilty to the charges and filed a motion to suppress. Appellant argued Trooper Bell lacked reasonable suspicion to administer field sobriety tests, administered those tests improperly, and lacked probable cause to arrest.

{¶ 16} A suppression hearing was held on May 7, 2019. Meadows and Bell testified for the state. Appellant presented no evidence. At the conclusion of the hearing, the trial court denied appellant's motion to suppress.

{¶ 17} On October 7, 2019, the matter proceeded to a jury trial on the charges of OVI and refusing a chemical test with a prior conviction within 20 years. Appellant opted to try the assured clear distance ahead charge to the court.

{¶ 18} Meadows and Bell testified for the state, and appellant testified on his own behalf. The jury found appellant guilty of OVI and refusing a chemical test with a prior conviction within 20 years, and the trial court found appellant guilty of assured clear distance.

{¶ 19} Appellant filed an appeal and the matter is now before this court for consideration. He raises three assignments of error as follow:

I

{¶ 20} "THE TRIAL COURT ERRED WHEN IT DENIED APPELLANT'S MOTION TO SUPPRESS."

II

{¶ 21} "APPELLANT'S CONVICTIONS WERE BASED ON INSUFFICIENT EVIDENCE."

III

{¶ 22} "APPELLANT'S CONVICTIONS WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

I

{¶ 23} In his first assignment of error, Appellant argues the trial court erred in denying his motion to suppress. We disagree.

{¶ 24} There are three methods of challenging on appeal a trial court's ruling on a motion to suppress. First, an appellant may challenge the trial court's findings of fact. In reviewing a challenge of this nature, an appellate court must determine whether said findings of fact are against the manifest weight of the evidence. *State v. Fanning*, 1 Ohio St.3d 19, 437 N.E.2d 583 (1982); *State v. Klein*, 73 Ohio App.3d 486, 597 N.E.2d 1141(1991); *State v. Guysinger*, 86 Ohio App.3d 592, 621 N.E.2d 726 (1993). Second, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. In that case, an appellate court can reverse the trial court for committing an error of law. *State v. Williams*, 86 Ohio App.3d 37, 619 N.E.2d 1141 (1993).

Finally, assuming the trial court's findings of fact are not against the manifest weight of the evidence and it has properly identified the law to be applied, an appellant may argue the trial court has incorrectly decided the ultimate or final issue raised in the motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case. *State v. Curry*, 95 Ohio App.3d 93, 641 N.E.2d 1172 (1994); *State v. Claytor*, 85 Ohio App.3d 623, 620 N.E.2d 906 (1993); *Guysinger*, supra. As the United States Supreme Court held in *Ornelas v. U.S.*, 517 U.S. 690, 116 S.Ct. 1657, 1663, 134 L.Ed.2d 911 (1996), "... as a general matter determinations of reasonable suspicion and probable cause should be reviewed de novo on appeal."

{¶ 25} When ruling on a motion to suppress, the trial court assumes the role of trier of fact and is in the best position to resolve questions of fact and to evaluate the credibility of witnesses. See *State v. Dunlap*, 73 Ohio St.3d 308, 314, 1995-Ohio-243, 652 N.E.2d 988; *State v. Fanning*, 1 Ohio St.3d 19, 20, 437 N.E.2d 583 (1982).

{¶ 26} Appellant raises several arguments under this assignment of error. In the first, appellant argues Trooper Bell lacked reasonable suspicion to administer field sobriety tests. We disagree.

{¶ 27} In reviewing whether field sobriety testing was proper, we apply a "totality of the circumstances" approach. See, e.g., *State v. Locker*, 5th Dist. Stark App. No. 2015CA00050, 2015-Ohio-4953, ¶ 36, citing *State v. Freeman*, 64 Ohio St.2d 291, 414 N.E.2d 1044 (1980).

{¶ 28} "Requiring a driver to submit to a field sobriety test constitutes a seizure within the meaning of the Fourth Amendment. Courts have generally held that the intrusion on the driver's liberty resulting from a field sobriety test is minor, and the officer therefore need only have reasonable suspicion that the driver is under the influence of alcohol in order to conduct a field sobriety test." *State v. Bright*, 5th Dist. Guernsey No.2009-CA-28, 2010-Ohio-1111, ¶ 17, citing *State v. Knox*, 2nd Dist. Greene No.2005-CA-74, 2006-Ohio-3039.

{¶ 29} An officer may not request a motorist to perform field sobriety tests unless the request is independently justified by reasonable suspicion based upon articulable facts that the motorist is intoxicated. *State v. Evans*, 127 Ohio App.3d 56, 62, 711 N.E.2d 761 (1998), citing *State v. Yemma*, 11th Dist. Portage App. No. 95-P-0156, 1996 WL 495076 (Aug. 9, 1996). "Reasonable suspicion is "* * * something more than an inchoate or unparticularized suspicion or hunch, but less than the level of suspicion required for probable cause." *State v. Shepherd*, 122 Ohio App.3d 358, 364, 701 N.E.2d 778 (1997).

{¶ 30} The Supreme Court of Ohio in *State v. Batchili*, 113 Ohio St.3d 403, 2007-Ohio-2204, 865 N.E.2d 1282, paragraph two of the syllabus found: "The 'reasonable and articulable' standard applied to a prolonged traffic stop encompasses the totality of the circumstances, and a court may not evaluate in isolation each articulated reason for the stop." Additionally, "a court will analyze the reasonableness of the request based on the totality of the circumstances, viewed through the eyes of a reasonable and prudent police officer on the scene who must react to events as they unfold." *Village of Kirtland Hills v. Strogin*, 6th Dist. Lake App. No.2005-L-073, 2006-Ohio-1450, ¶ 13, citing, *Village of Waite Hill v. Popovich*, 6th Dist. Lake App. No.2001-L-227, 2003-Ohio-1587, ¶ 14.

{¶ 31} "Where a non-investigatory stop is initiated and the odor of alcohol is combined with glassy or bloodshot eyes and further indicia of intoxication, such as an admission of having consumed alcohol, reasonable suspicion exists." *State v. Strope*, 5th Dist. Fairfield No. 08 CA 50, 2009-Ohio-3849 ¶ 19.

{¶ 32} In this matter, we find Appellant presented ample indicia of intoxication. He was involved in an accident, his eyes were glassy and bloodshot, his person and breath smelled of alcohol, his speech was slurred, and he admitted to having consumed alcohol. We find, therefore, reasonable suspicion existed for Trooper Bell to conduct field sobriety testing.

{¶ 33} Appellant next argues Trooper Bell failed to properly administer the field sobriety tests. We disagree.

{¶ 34} R.C. 4511.19(D)(4)(b) provides that evidence and testimony regarding the results of a field sobriety test may be presented "if it is shown by clear and convincing evidence that the officer administered the test in substantial compliance with the testing standards for any reliable, credible, and generally accepted field sobriety tests that were in effect at the time the tests were administered, including, but not limited to, any testing standards then in effect that were set by the national highway traffic safety administration[.]"

{¶ 35} During the suppression hearing, Trooper Bell testified he received training on impaired driving in 2018 with the current national highway safety administration manual. The manual was admitted into evidence as States' Exhibit 1. Transcript of Suppression hearing (TS) 17-18. Bell testified he was trained to administer the three standardized field sobriety tests, HGN, walk and turn, and one-legged stand. He

explained how each is administered per the manual and how Appellant preformed on each. TS 18-26. Trooper Bell's dash camera video was also played during the suppression hearing and admitted into evidence.

{¶ 36} For the most part, Appellant's argument is not that Trooper Bell failed to properly administer the tests, but rather that a language barrier prevented Appellant from adequately understanding Bell's instructions. He further argues his back problem and his prescribed anxiety medication could have caused "false positives" for intoxication. These determinations were questions of fact for the trial court to determine.

{¶ 37} Bell testified that for the most part, he had no trouble communicating with Appellant. TS 30. The trial court was able to view Trooper Bell's dash camera video of the incident and assess the interaction between Bell and Appellant. TS 27.

{¶ 38} As for Appellant's back problem, Appellant brought this matter to the attention of Trooper Bell, and advised Bell it would not impact his ability to perform the tests. TS 23. Likewise, while Appellant points out his anxiety medication could have impacted his performance on the HGN test, he produced no evidence at the suppression hearing as to what medication he was taking, nor its possible side effects. Whether or not the medication could impact the results of the test is a separate matter from whether or not Trooper Bell administered the test in compliance with the applicable standards.

{¶ 39} Finally, while Appellant points out Trooper Bell neglected to advise Appellant not to stop once he started the walk and turn test, Trooper Bell indicated he did not use the fact that Appellant did stop as a clue against him. TS 45-46, 49.

{¶ 40} The trial court viewed Trooper Bell's dash camera video of the incident from which it could glean Appellant's understanding of the instructions given by Bell and make

its factual determinations, and we find no error in the same. TS 27. Further, there is no indication that Trooper Bell failed to properly administer Appellant's field sobriety testing.

{¶ 41} In his final argument in this assignment of error, Appellant argues Trooper Bell lacked probable cause to arrest him. We disagree.

{¶ 42} As per our discussion above, Trooper Bell had reasonable suspicion Appellant was driving under the influence in order to conduct the field sobriety tests, and, following Appellant's performance on those tests and his observations prior, Trooper Bell had probable cause to arrest Appellant.

{¶ 43} The first assignment of error is overruled.

## II, III

{¶ 44} We address Appellant's final two assignments of error together. In his second and third assignments of error, appellant argues his convictions are not supported by sufficient evidence and are against the manifest weight of the evidence. We disagree.

{¶ 45} On review for sufficiency, a reviewing court is to examine the evidence at trial to determine whether such evidence, if believed, would support a conviction. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991). "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Jenks* at paragraph two of the syllabus, following *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine "whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice

that the conviction must be reversed and a new trial ordered." *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). See also, *State v. Thompkins*, 78 Ohio St.3d 380, 678 N.E.2d 541 (1997). The granting of a new trial "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *Martin* at 175.

{¶ 46} Appellant was charged with operating a vehicle under the influence of alcohol pursuant to R.C. 4511.19(A)(1)(a) which provides "[n]o person shall operate any vehicle * * * if, at the time of the operation, * * * [t]he person is under the influence of alcohol, a drug of abuse, or a combination of them."

{¶ 47} Appellant was further charged with refusing a chemical test and prior conviction within 20 years pursuant to R.C. 4511.19(A)(2)(a) which required the state to prove Appellant was operating under the influence in the present matter, refused a chemical test, and further establish he had a prior OVI conviction within the past 20 years.

{¶ 48} Finally, Appellant was charged with assured clear distance ahead pursuant to R.C. 4511.21(A). This charge required the state to prove Appellant operated his vehicle at a speed greater than that which would permit Appellant to bring his vehicle to a stop within the assured clear distance ahead.

{¶ 49} As to the first two charges, Appellant again argues any evidence against him is tainted due to the language barrier. However, both Meadows and Bell testified at trial that they had no difficulty communicating with Appellant. Transcript of trial (TT) 107, 144.

{¶ 50} Meadows testified she believed Appellant was intoxicated due to the fact he rear ended her vehicle, the strong odor of alcohol coming from his person and his slurred

words. Based upon her observations Meadows believed he had no business driving, and refused Appellant's request to follow him to Conway Motors. TT 105, 107-108.

{¶ 51} Trooper Bell testified Appellant had a strong odor of alcohol emanating from his breath and person, glassy bloodshot eyes, and slurred speech which was distinct from his accent. TT 130, 144. He swayed while performing the HGN test and exhibited 6 of 6 clues. TT 139, 158. None of these facts are impacted by a language barrier. Thus even if the jury discounted the remaining two tests, the state presented sufficient evidence to support Appellant's conviction for driving under the influence.

{¶ 52} For the same reasons, the state further produced sufficient evidence of refusal with a prior conviction. Sufficient evidence was presented to support Appellant's conviction for OVI and Appellant testified he refused a breath test. TT 226. The state further presented a certified copy of Appellant's prior OVI conviction from 2016. TT 155-156, State's Exhibit 9. We find the state presented sufficient evidence to support the charge of refusal with a prior conviction.

{¶ 53} The state also produced sufficient evidence of assured clear distance. Meadows testified that Appellant rear ended her vehicle as she waited at a traffic light. TT 98. This testimony was sufficient to support the conviction.

{¶ 54} Finally, Appellant's convictions are not against the manifest weight of the evidence. As for the OVI and refusal with a prior conviction, jurors viewed portions of Trooper Bell's dash camera video of the incident and could draw conclusions regarding the interaction between Bell and Appellant for themselves. TT 156-161. Appellant took the stand in his own defense and gave his version of events. It was within the province of the jury to discount Appellant's version and accept the state's version and we do not find

the jury lost its way in so doing. Likewise, in regard to the assured clear distance charge, while it is accurate Appellant testified Meadows backed into him as he waited at the light, the court as the trier of fact was free to choose to believe Meadow's version of events over Appellant's, and we find no error in the same.

{¶ 55} The second and third assignments of error are overruled.

{¶ 56} The judgment of the Licking County Municipal Court is affirmed.

By Wise, Earle, J.

Gwin, P.J. and

Baldwin, J. concur.

EEW/rw