[Cite as *State v. Coyle*, 2021-Ohio-3023.]

COURT OF APPEALS
DELAWARE COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | |
| | : | Hon. John W. Wise, P.J. |
| Plaintiff-Appellee | : | Hon. Patricia A. Delaney, J. |
| | : | Hon. Earle E. Wise, Jr., J. |
| -vs- | : | |
| | : | Case No. 20 CAC 10 0043 |
| | : | |
| AMANDA COYLE | : | |
| | : | |
| | : | |
| Defendant-Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING:        Appeal from the Delaware Municipal
Court, Case No. 19 TRC 4025

JUDGMENT:                              AFFIRMED

DATE OF JUDGMENT ENTRY:         August 31, 2021

APPEARANCES:

For Plaintiff-Appellant:                    For Defendant-Appellant:

ERIC BURKETT                              BLAISE KATTER
Assistant Prosecuting Attorney              TIM HUEY
Delaware City Prosecutor's Office           Huey Defense Firm
70 North Union St.                         3240 Henderson Road, Suite B
Delaware, OH 43015                         Columbus, OH 43220

*Delaney, J.*

{¶1} Defendant-Appellant Amanda Coyle appeals from the judgment of the Delaware Municipal Court, which denied her motion to suppress the evidence that led to her conviction. Plaintiff-Appellee is the State of Ohio.

## FACTS AND PROCEDURAL HISTORY

### The Stop

{¶2} On Sunday, March 24, 2019, at 4:49 a.m., Ohio State Highway Patrol Trooper Darius Patterson was on routine patrol on Interstate 71 in Delaware County. As Trooper Patterson was monitoring northbound traffic, he observed a black Honda travelling at a high speed. Trooper Patterson activated the Lidar speed measuring device in his cruiser, and it calculated the Honda's speed was 83 mph in a 70-mph zone. Based on this speed, Trooper Patterson activated his lights and initiated a traffic stop of the Honda.

{¶3} The driver of the Honda pulled to the side of the highway without incident. Trooper Patterson approached the driver's side of the Honda and spoke with the driver, identified as Defendant-Appellant Amanda Coyle. Coyle was the sole occupant of the Honda. Trooper Patterson asked Coyle where she was coming from, and she stated she was coming from Cincinnati to go to Huron County. As he was speaking with Coyle, Trooper Patterson detected a strong odor of an alcoholic beverage coming from the vehicle and Coyle's eyes appeared to be glassy and bloodshot. Trooper Patterson asked Coyle where she was coming from before she left Cincinnati. Trooper Patterson recalled that "she said she had gone out. She had been drinking, I believe, Jack and Coke prior when she was out at one of the bars down in Cincinnati." (T. 20).

{¶4} While Trooper Patterson spoke with Coyle, he did not observe that Coyle slurred her speech. She retrieved her identification and registration without incident while speaking with him.

{¶5} Trooper Patterson asked Coyle to exit the vehicle so that he could administer field sobriety tests. Coyle complied. She did not require assistance getting out of the vehicle.

{¶6} Trooper Patterson first administered the Horizontal Gaze Nystagmus (HGN) test. Upon concluding the test, Trooper Patterson observed six out of six potential clues. Coyle's eyes remained glassy and bloodshot, and he continued to detect the strong odor of an alcoholic beverage coming from Coyle. Trooper Patterson asked Coyle to perform the Walk and Turn (WAT) test. Coyle exhibited four out of eight possible clues: Coyle moved her feet for balance during the instruction phase; she did not touch heel-to-toe; she stepped off the line; and, she incorrectly turned. She was next asked to perform the One Leg Stand (OLS) test. Coyle exhibited one clue during the test because Coyle put her foot down. Trooper Patterson finally administered a non-standardized test – the alphabet test. He asked Coyle to recite the alphabet from the letter "D" to "N." Coyle performed the test as instructed.

{¶7} After the field sobriety tests, Trooper Patterson arrested Coyle for OVI-Impaired. He handcuffed Coyle and placed her in the back of his cruiser. She was transported to the Delaware Ohio State Highway Patrol Post on U.S. Route 23. She was read the BMV 2255 form and informed of the consequences of submitting to or refusing a breath alcohol (BAC) test. Coyle agreed to perform a BAC test. Trooper Patterson administered the breath tests at 5:40 a.m. and 5:43 a.m. The first test indicated Coyle

had a concentration of 0.118 grams by weight of alcohol per 210 liters of deep lung breath. The second test indicated Coyle had a concentration of 0.119 grams by weight of alcohol per 210 liters of deep lung breath. Coyle was charged with a second OVI for a per se breath test violation.

### Motion to Suppress

{¶8} Counsel for Coyle filed a motion to suppress, arguing there was no reasonable suspicion to detain her to convert the traffic offense into an OVI investigation, and that there was no probable cause to arrest her for OVI.

{¶9} On June 26, 2019, the trial court held a hearing on the motion to suppress. As part of Trooper Patterson's testimony, the State presented the dashcam video from the stop. At the time of the stop, Trooper Patterson's belt microphone was on the charger so there was no audio of the officer's conversation with Coyle during the stop.

{¶10} On December 6, 2019, the trial court denied the motion to suppress.

### Jury Trial

{¶11} The matter proceeded to a jury trial on September 17, 2020. The jury found Coyle guilty of OVI-Impaired and OVI-Per Se (Low Breath). The offenses merged for sentencing and the State elected to proceed on the OVI-Impaired charge. The trial court sentenced Coyle to a three-day DIP class, fine and costs, license suspension and a period of monitored probation.

{¶12} Coyle filed a notice of appeal on October 16, 2020.

**ASSIGNMENT OF ERROR**

{¶13} Coyle raises one Assignments of Error:

{¶14} "THE TRIAL COURT ERRED BY OVERRULING THE MOTION TO SUPPRESS."

**ANALYSIS**

{¶15} Coyle argues in her sole Assignment of Error that the trial court erred when it denied her motion to suppress. We disagree.

{¶16} There are three methods of challenging a trial court's ruling on a motion to suppress on appeal. First, an appellant may challenge the trial court's finding of fact. In reviewing a challenge of this nature, an appellate court must determine whether the trial court's findings of fact are against the manifest weight of the evidence. *See State v. Fanning*, 1 Ohio St.3d 19, 437 N.E.2d 583 (1982); *State v. Klein*, 73 Ohio App.3d 486, 597 N.E.2d 1141 (4th Dist.1991). Second, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. In that case, an appellate court can reverse the trial court for committing an error of law. *See Williams, supra*. Finally, an appellant may argue the trial court has incorrectly decided the ultimate or final issues raised in a motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case. *State v. Curry*, 95 Ohio App.3d 93, 96, 641 N.E.2d 1172 (8th Dist.1994).

{¶17} In this case, Coyle argues this Court should review the trial court's judgment to deny the motion to suppress to hold that either the trial court failed to apply the

appropriate test or correct law and/or the trial court incorrectly decided the ultimate or final issues raised in her motion to suppress

{¶18} When ruling on a motion to suppress, the trial court assumes the role of trier of fact and is in the best position to resolve questions of fact and to evaluate the credibility of witnesses. *See State v. Dunlap*, 73 Ohio St.3d 308, 314, 1995-Ohio-243, 652 N.E.2d 988; *State v. Fanning*, 1 Ohio St.3d 19, 20, 437 N.E.2d 583 (1982).

{¶19} In her appeal, Coyle argues that Trooper Patterson lacked reasonable suspicion to conduct field sobriety tests. In reviewing whether field sobriety testing was proper, we apply a "totality of the circumstances" approach. *See, e.g., State v. Tidwell*, Slip Opinion No. 2021-Ohio-2072, ¶ 40; *State v. Locker*, 5th Dist. Stark App. No. 2015CA00050, 2015-Ohio-4953, ¶ 36, citing *State v. Freeman*, 64 Ohio St.2d 291, 414 N.E.2d 1044 (1980).

{¶20} "Requiring a driver to submit to a field sobriety test constitutes a seizure within the meaning of the Fourth Amendment. Courts have generally held that the intrusion on the driver's liberty resulting from a field sobriety test is minor, and the officer therefore need only have reasonable suspicion that the driver is under the influence of alcohol in order to conduct a field sobriety test." *State v. Malkin*, 5th Dist. Licking No. 2019 CA 0100, 2020-Ohio-3059, 2020 WL 2611679, ¶ 28 quoting *State v. Bright*, 5th Dist. Guernsey No. 2009-CA-28, 2010-Ohio-1111, ¶ 17, citing *State v. Knox,* 2nd Dist. Greene No. 2005-CA-74, 2006-Ohio-3039. An officer may not request a motorist to perform field sobriety tests unless the request is independently justified by reasonable suspicion based upon articulable facts that the motorist is intoxicated. *State v. Evans*, 127 Ohio App.3d

56, 62, 711 N.E.2d 761 (1998), citing *State v. Yemma*, 11th Dist. Portage App. No. 95-P-0156, 1996 WL 495076 (Aug. 9, 1996).

{¶21} The Supreme Court of Ohio in *State v. Batchili*, 113 Ohio St.3d 403, 2007-Ohio-2204, 865 N.E.2d 1282, paragraph two of the syllabus found: "The 'reasonable and articulable' standard applied to a prolonged traffic stop encompasses the totality of the circumstances, and a court may not evaluate in isolation each articulated reason for the stop." Additionally, "a court will analyze the reasonableness of the request based on the totality of the circumstances, viewed through the eyes of a reasonable and prudent police officer on the scene who must react to events as they unfold." *Village of Kirtland Hills v. Strogin*, 6th Dist. Lake App. No.2005-L-073, 2006-Ohio-1450, ¶ 13, citing, *Village of Waite Hill v. Popovich*, 6th Dist. Lake App. No.2001-L-227, 2003-Ohio-1587, ¶ 14.

{¶22} Coyle cites to several cases in support of her argument that Trooper Patterson lacked reasonable suspicion to conduct field sobriety tests. *See State v. Hall*, 2016-Ohio-5787, 70 N.E.3d 1154 (5th Dist.); *State v. Baker*, 5th Dist. Ashland No. 17-COA-308, 2018-Ohio-2285; *State v. Derov*, 7th Dist. Mahoning No. 07 MA 71, 2009-Ohio-5513; and *State v. Dixon*, 2nd Dist. Greene No. 2000-CA-30, 2000 WL 1760664 (Dec. 1, 2000). She specifically points to Trooper Patterson's testimony that she did not demonstrate erratic driving, did not slur her speech, did not have any issues responding to Trooper Patterson's questions while she simultaneously produced her license and registration, and did not have trouble exiting the vehicle.

{¶23} In *Hall*, we concluded that red, watery, bloodshot eyes and an odor of alcohol, without additional indicia of intoxication, did not give the officer reasonable

suspicion the driver was under the influence when the stop was for a single marked lanes violation made during a left turn, without speeding or additional swerving.

{¶24} In *Baker*, we noted the appellant was pulled over for an equipment violation without any indication of erratic driving. 2018-Ohio-2285 at ¶ 22. The only other factor the State argued was indicia of intoxication was the time of night, that the stop was close to several liquor establishments, and that the appellant was attempting to hide his eyes. *Id*. We held the officer did not have a reasonable suspicion based on the condition of the appellant's eyes and the strong odor of alcohol without any additional indicia of intoxication. *Id*. at ¶ 26.

{¶25} The Seventh District considered a factual situation in *Derov* where the officer initiated a traffic stop based upon expired tags on the appellant's license plate. 2009-Ohio-5513 at ¶ 3. The officer had not observed erratic driving but had noticed the strong smell of alcohol emanating from the appellant's vehicle. *Id*. The officer admitted the appellant had no difficulty producing her license and registration or exiting her car and demonstrated no physical signs of impairment due to alcohol consumption. *Id*. Based on plain error, the court found there was a lack of reasonable suspicion to conduct field sobriety tests based solely on the time of night, appellant's red glassy eyes, and the strong smell of alcohol coming from her person. *Id*. at ¶ 15-17.

{¶26} In *Dixon*, the Second District relied upon *State v. Spillers*, 2nd Dist. Darke No. 1504, 2000 WL 299550 (Mar. 24, 2000), to hold an officer did not have reasonable suspicion to administer sobriety tests based on the time of night (2:20 a.m.), the suspect's glassy, bloodshot eyes, an odor of alcohol on the suspect's person, and the suspect's admission of having consumed one or two beers. 2000 WL 1760664 at *2. The court

noted that the officer did not observe any erratic driving prior to administering field sobriety tests. *Id.*

{¶27} We held in *Baker* that "[r]easonable suspicion is "* * * something more than an inchoate or unparticularized suspicion or hunch, but less than the level of suspicion required for probable cause." *Baker*, 2018-Ohio-2285 at ¶ 16 quoting *State v. Shepherd*, 122 Ohio App.3d 358, 364, 701 N.E.2d 778 (1997). What is more, a motorist "need not display every possible indication of being under the influence in order for reasonable, articulable suspicion grounds to exist for the trooper to proceed with field sobriety testing." *Baker* at ¶ 26 quoting *State v. Cook*, 5th Dist. Fairfield No. 06-CA-20, 2007-Ohio-707, ¶ 19. "Where a non-investigatory stop is initiated and the odor of alcohol is combined with glassy or bloodshot eyes and further indicia of intoxication, such as an admission of having consumed alcohol, reasonable suspicion exists." *State v. Malkin*, 2020-Ohio-3059, ¶ 31 quoting *State v. Strope*, 5th Dist. Fairfield No. 08 CA 50, 2009-Ohio-3849 ¶ 19. The facts of this case can be differentiated from the cases cited by Coyle. This case does not involve an equipment violation or a de minimus traffic violation that occurred early in the morning with simply an odor of alcohol emanating from the driver's person. *See State v. Russo*, 11th Dist. Lake No. 2019-L-080, ¶ 42.

{¶28} In this case, Trooper Patterson initiated a traffic stop because Coyle was driving 83 mph in a 70-mph zone. She did not demonstrate erratic driving and Trooper Patterson admitted it was not excessive speeding, but her speed was 13 mph over the posted speed limit. (T. 44). When Trooper Patterson made contact with Coyle, he smelled the strong odor of alcohol coming from the vehicle. Coyle was the only occupant of the car. Trooper Patterson observed that Coyle's eyes appeared bloodshot and glassy. Coyle

told Trooper Patterson that she had come from Cincinnati, where she stated she had "Jack and Coke" at a bar earlier in the night. The amount of Jack and Coke that Coyle consumed prior to driving is unknown.

{¶29} We must look to the totality of the circumstances through the eyes of Trooper Patterson, giving due deference to his training and experience to determine whether reasonable suspicion existed for the officer to conduct field sobriety testing. *See State v. Russo*, 2020-Ohio-3236, ¶ 45. As we held in *State v. Strope*, "'Where a non-investigatory stop is initiated and the odor of alcohol is combined with glassy or bloodshot eyes and further indicia of intoxication, such as an admission of having consumed alcohol, reasonable suspicion exists.'" *State v. Strope*, 5th Dist. Fairfield No. 08 CA 50, 2009-Ohio-3849, ¶ 19, quoting *State v. Beeley*, 6th Dist. Lucas No. L-05-1386, 2006-Ohio-4799, ¶ 16. *See State v. Hamilton*, 5th Dist. Holmes No. 17CA006, 2017-Ohio-8826, ¶ 17; *State v. Palsgrove*, 5th Dist. Fairfield No. 18-CA-24, 2019-Ohio-1855, 2019 WL 2121351, ¶ 11. The record in this case supports the finding there was further indicia of intoxication: speeding and an admission of consuming an indeterminate amount of alcohol.

{¶30} We acknowledge this case is a close call. In *State v. Palsgrove*, we encountered a similar factual scenario where the officer conducted field sobriety tests of the defendant because the officer clocked a speed sixteen miles per hour over the limit, detected an odor of alcohol, observed bloodshot, glassy eyes, and received an admission from defendant that he was coming from a brewery and had consumed one to two beers. *Palsgrove*, 5th Dist. Fairfield No. 18-CA-24, 2019-Ohio-1855, 2019 WL 2121351. The trial court granted the defendant's motion to suppress, and the State appealed. We held the

trial court erred based upon the totality of the circumstances. We found the officer "relied on specific articulable facts giving rise to a reasonable suspicion [appellee] was driving under the influence; justifying an extension of the initial detention for the performance of field sobriety testing." *Id.* at ¶ 15 quoting *State v. Ciminello*, 5th Dist. Ashland No. 17-COA-030, 2018-Ohio-467, ¶ 25.

{¶31} As in *Palsgrove*, we find that based on the totality of the circumstances, Trooper Patterson relied upon specific articulable facts giving rise to a reasonable suspicion that Coyle was driving under the influence, thereby justifying an extension of the initial detention for the performance of field sobriety testing. We find no error by the trial court to deny the motion to suppress.

{¶32} The sole Assignment of Error is overruled.

## CONCLUSION

{¶33} The judgment of the Delaware Municipal Court is affirmed.

By: Delaney, J., and

Wise, John, P.J., concur.

Wise, Earle, J., dissents.

*Wise, Earle, J., dissents.*

{¶ 34} I respectfully dissent from the majority opinion.

{¶ 35} The majority cites *Palsgrove* as a case with similar facts. In *Palsgrove*, we found there was reasonable suspicion of impairment in order to expand the traffic stop to include field sobriety tests. However, I dissented in *Palsgrove* finding reasonable suspicion was not present upon a review of the totality of the circumstances. I dissent here for the same reasons.

{¶ 36} A review of the totality of the circumstances must look to the factors in *State v. Evans*, 127 Ohio App.3d 56, fn.2,711 N.E.2d 761 (11th Dist. 1998). The incriminating factors here; time of day, a strong odor of alcohol, glassy bloodshot eyes and an admission of consumption, are very similar to those in *Palsgrove*. In *Palsgrove*, the odor was described as "detectable" and the admission was consumption of "one or two beers."

{¶ 37} In the instant case the trial court found Trooper Patterson testified credibly. JE at 7. The court found the facts to be: the stop was "during the early morning hours of Sunday *** [appellant was] traveling 13 mph over the posted speed limit *** Trooper Patterson smelled a 'strong' odor of alcoholic beverage *** saw [appellant's] bloodshot, glassy eyes *** [appellant] also admitted to drinking a 'Jack and Coke' at a bar earlier in the night." *Id.*

{¶ 38} Appellant admitted to drinking alcohol and she had an odor of alcohol. As we stated in *State v. Keserich*, 5th Dist. Ashland No. 14-COA-0011, 2014-Ohio-5120 at ¶ 16:

[T]he admission of consumption of two alcoholic drinks is significant, but not determinative, given the status of the law in Ohio regarding drinking and driving. A smell of an odor of alcohol on the Appellant is a factor of significance, but is not surprising given his admission of consumption of two alcoholic drinks. These two factors are cumulative in effect; they do not have a synergistic effect on a reasonable grounds determination.

{¶ 39} These observations confirm she drank, they do not provide separate independent indicia of intoxication.

{¶ 40} The fact she was stopped at 4:50 AM is a valid factor to consider where she had been and if she had consumed alcohol. The significance of this factor is lessened by her admission she had been at a bar several hours earlier and had a "Jack and Coke."

{¶ 41} Speeding can also be a valid factor to consider as an indicator. On cross-examination the trooper indicated excessive speed may be an indicia of intoxication. However, he clearly indicated that he did not consider the speed excessive in this case.

{¶ 42} The above factors are valid considerations which may tend to show impairment. However, the additional *Evans'* factors cannot be ignored. In this case as in *Palsgrove*, these additional factors show no indicia of impairment and tend to show no impairment.

{¶ 43} Appellant did not exhibit erratic driving. The trooper observed no swerving or weaving while following the vehicle. When the trooper activated his overhead lights, she responded timely, signaled properly and appropriately pulled to the side of roadway.

{¶ 44} Appellant showed no physical deficiencies. When asked to produce documents her motor skills were intact. She had no difficulty producing her license from her purse as well as registration and insurance documents from the glove compartment.

{¶ 45} Appellant exhibited no cognitive signs of impairment. She had no difficulty understanding and communicating with the trooper. While speaking with appellant, the trooper observed her speech; it was not slow or slurred. The trooper did not observe appellant having any difficulties while he attempted to divide her attention by asking her to simultaneously answer questions and perform physical tasks.

{¶ 46} The factors of odor and admission are solid evidence of consumption. However, the question to be answered is what is the effect of the consumption on appellant's ability to operate a vehicle. The other factors present in this case are direct touchstones of impairment. These factors do not show any indicia of cognitive or physical impairment.

{¶ 47} I would find based upon the totality of the circumstances the trooper lacked reasonable suspicion of impairment to justify field sobriety tests. I would sustain appellant's assignment of error and find the motion to suppress should have been granted.